## IN RE PETITION OF MORRISON.

### (186 N. W. 556.)

(File No. 4359. Opinion filed January 30, 1922.)

1. **Attorneys—Reinstatement to Practice—Moral Fitness, Presumption Re, After Disbarment, Burden of Proof on Petitioner.**

    While, when the Court is called upon to determine moral fitness of an applicant for admission to the bar, it will indulge the presumption that he is morally fitted, and but little evidence is required to support the presumption, yet, after he has been disbarred for unfitness to act as an officer in courts of justice, and petitions for reinstatement, burden is on him to establish by satisfactory evidence, either error in Court's judgment of disbarment or that he has undergone such moral change as to render him fit to enjoy the trust and confidence once forfeited; and Court should be even slower to reinstate than to disbar; and Court's duty upon such petition is to seek, not merely through hearings in Court but through every legitimate channel, all obtainable information touching his then moral fitness to be reinstated to practice.

2. **Same—Applicant Charged With Subornation of Perjury, Disagreed Jury, License Issued Later, Subsequent Charges of Unprofessional Conduct, Disbarment Following, Accumulative Information, "Intense Desire to Succeed" as Excuse for Subornation of Perjury, Dismissal of Prosecution on Promise of Better Conduct—Evidence Showing He Deemed "End Justifies Means," Petition Denied.**

    Petitioner, although the charge of subornation of perjury was pending against him, a jury upon trial therefor having disagreed, having been granted a license to practice, and information having thereafter come to members of this Court of his unprofessional conduct, and charges having been filed seeking his disbarment, and the Court having rendered judgment of disbarment therefor; he having petitioned for reinstatement to practice, alleging as excuse for his wrong-doing, among other things, "that because of exigencies confronting him in early life he had become combative and determined and that in his intense desire to succeed professionally," etc., he lost sight of the ethics, rules and standards he should have heeded; and it now appearing that before his admission to practice he, in connection with his appearance in the Federal Court for persons charged with illegal sale of liquor, performed acts which formed the basis of said charge of subornation of

perjury, but that the charge was finally dismissed without a second trial, because of his being a young man and of assurances that he would so conduct himself thereafter as to prove himself worthy of leniency; held, that notwithstanding he soon after admission to practice fought his way to a prominent place in the profession and to leadership in local politics and business activities, yet he in every act of life acted on the theory that Might makes Right and that the end justified the means; and in view of all the evidence his petition should be denied.

3.  Same—Consciousness of Wrong-doing and Promise of Undoing Same as Motives for Application—Life, Conduct, Since Disbarment, Whether Assuring Future Uprightness as Question for Determination.

Petitioner's grounds for reinstatement being that consciousness of wrong-doing, humiliation and suffering are his only motives in applying for restoration "to the end that he may undo that which he has done in the past" and may with self-respect follow the profession, and that therefore he believes himself entitled "to such forgiveness as will enable him to start anew," and while the Court has nothing to forgive save breach of its confidence, and would gladly restore to him the authority he seeks if satisfied he had undergone such change of mind and heart as entitled him to renewal of our trust, yet the question before us is: Looking at his life and conduct prior to disbarment and the reasons for disbarment, have his life and conduct since been such as to satisfy Court that if so restored he will be upright, honorable and honest in all his dealings? Will his restoration to the bar be compatable with proper respect of the Court for itself and with the dignity of the profession? Petitioner cannot expect Court to feel warranted in acting upon his mere promises without some other proof that a change has really taken place—experience has indicated folly of so doing.

4.  Same—Solicited Letters From Lawyers and Jurists, Petitioner "Professional" in His Dealings With Him, "Exceptional Gifts," Touching Reinstatement, Penitence, Having Suffered Sufficient "Punishment" as Grounds, Futility Of.

Petitioner for reinstatement having presented some sixty letters from members of state bar including many prominent practitioners and judges and executives, all of whom are deserving and have full confidence of this Court; several of whom state they found petitioner professional in their dealings with him, a fact of little importance when considered in light of the findings and of his confessions; some mentioning his exceptional gifts as justifying reinstatement—apparently forgetting that the greater the mental gifts the greater the power for evil; several expressing wish that he would be reinstated and con-

fidence in his future conduct, some basing such confidence upon his penitent frame of mind and humiliation for past errors; some urging reinstatement because when an attorney has overstepped the line and been called to account by Court and evidences desire for reinstatement and willingness to abide by rules of Court, etc., he should be given the opportunity; many more thinking he has suffered sufficient punishment—apparently forgetting that disbarment is not imposed as a punishment but as a necessary means of protecting society, and that as long as such protection is necessary this Court has no right to deny it merely because such individual may suffer from not being allowed to hold power to injure society; many urging that the punishment already suffered will deter from future wrongdoing—forgetting that it is not such fear that qualify the practitioner; one valid ground only having been stated, to-wit, that he is making an honest endeavor to prove himself worthy of future indulgence of Court, but this one failing to state any fact in proof thereof; and inasmuch as most of these parties knew petitioner merely as a member of their profession and nothing of his real life and conduct since; and while, as stated by one letter writer, so far as disbarment is for protection of the public the scale should be evenly held, but so far as it is for the good name of the profession itself to an extent an end selfish to us as lawyers, and condonation is preferable to condemnation—yet as members of the Court, we must suppress the spirit of condonation which would otherwise influence our action and hold the scales of justice evenly.

5. Same—Appellant's War Record, Misrepresentations Re Income For Dependents' Support—Righting Financial Wrongs Only Through Necessity—Non-showing of Effort to Justify Renewed Confidence.

The evidence in connection with appellant's petition for reinstatement to law practice, showing in connection with his war record that he made false representation concerning the amount of his income, which was ample for the support of his wife and children but which he represented to be less than sufficient, taken in connection with his claim of having righted the financial wrongs he had perpetrated, falls short of showing an honest endeavor to prove himself worthy of renewed confidence.

Original proceeding in the matter of the petition of Patrick C. Morrison to be reinstated as an attorney at law. Petition denied.

*Stephens & McNamee,* and *Martens & Goldsmith,* for Petitioner.

WHITING, J. The license to practice law which had theretofore been issued to Patrick C. Morrison was canceled in July,

1920.   Our opinion in the disbarment proceeding will be found reported in Re Morrison, 43 S. D. 185, 178 N. W. 732.   Mr. Morrison has filed a petition seeking to be reinstated as a member of the bar of this state.

[1]   When an applicant seeks admission to the bar, and the court or other examining body is called upon to determine his moral fitness for the high position to which he aspires, he is entitled to the benefit of the presumption that he is morally fitted for such position; and but little evidence is required in support of such presumption.   When, after having been so admitted, it is charged that he is unfit to continue to exercise the power vested in him as an attorney, the court should guard his every right and see to it that he be not deprived of an opportunity to follow his chosen profession—in preparation for which he may have given years of effort—except upon clear proof of more than trivial abuses of the confidence that has been reposed in him.   But when, after full and fair trial, he stands convicted of such wrongdoing as demonstrates his unfitnes to act as an officer in courts of justice, and his license as such has been revoked, if he petitions for reinstatement, the burden is upon him to establish by satisfactory evidence, either that the court erred in its judgment of disbarment, or that he has undergone such moral change as to render him a fit person to enjoy the trust and confidence once forfeited. A court should be slow to disbar, but it should be even slower to reinstate; it should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer.   It therefore becomes the duty of the court, upon a petition for reinstatement of one who has been disbarred, to seek, not merely through hearings in court, but through every legitimate channel open to it, such information as it may obtain touching upon the then moral fitness of the petitioner to be admited to practice his chosen profession.   Such an investigation we have endeavored to make in the present case.

[2]   Petitioner sought admission to the bar of this state in the spring of 1910.   He was examined early in April, and received markings entitling him to admission; but, before a certificate was issued, our attention was called to the fact that he stood charged in a federal court with subornation of perjury.   It ap-

pears that, upon a trial of such charge, the jury disagreed and the charge was thereafter dismissed.  Of this fact we were advised in May.  Because of the above and other matters called to our attention, we were led to delay issuing a certificate to petitioner; and it was not until December, 1910, that we did issue same. Soon after his admission to practice law, rumors of unprofessional conduct on the part of petitioner commenced to reach the members of this court; these rumors grew more frequent as time passed until is was no surprise when, in March, 1918, charges were filed and his disbarment sought.  Petitioner, both in his petition for reinstatement and when he appeared before this court upon same, conceded the correctness of the court's findings and the justness of its order in the disbarment proceedings.  Since such proceedings, much information has reached us bearing upon unprofessional conduct of petitioner other than that presented in the charges that were filed.  Petitioner himself says that, because of the exigencies which confronted him in early life, he "had become combative and determined, and that in his intense desire to succeed professionally and financially, for the sake of his family and himself, he entered into the competition and strife of his profession to such an extent that he lost sight of those ethical rules and standards which he should have heeded."  During the investigation since the filing of the petition for reinstatement, we have been reliably advised that, before his admission to practice by this court, petitioner had appeared in the federal court for persons charged with illegal sales of liquor; that it was in connection with such a case that the charge against him, above referred to, arose; and that such charge was finally dismissed, without a second trial, because of the fact that petitioner was a young man, and because of assurances that petitioner would so conduct himself in the future as to prove himself worthy of leniency. From all the information received, we are convinced that, while petitioner is a man of more than ordinary ability, one who, within a short time after his admission to practice law, fought—and we use this term advisedly—his way, not only to a prominent place in his profession, but to leadership in political and business activities in the community where he lived—yet that, in every walk of life, he had acted upon the theory that might makes right, and that the end he sought justified whatever means were necessary

for its accomplishment. We make the above statement only after a most careful consideration of all matters that have come to our attention both upon and after the disbarment proceedings. That his errors were, at first, largely due to the ardor of youth is undoubtedly true; perhaps if he had been associated with some older person to whom he could, if he would, have gone for advice, his whole after life might have been different.

[3] Petitioner comes into court and most humbly states in his petition:

"Your petitioner realizes fully that he is of an age at which it would be possible for him to engage in other pursuits, which might be more lucrative than the practice of law, but submits to your honors that his consciousness of wrong-doing, his humiliation and suffering are his sole and only motives in making this application for restoration, to the end that he may undo that which he has done in the past and may follow out with self-respect that profession which was chosen by him in youth as the highest profession, and which he thereafter through his error and wrongdoing brought into disrepute, and in the belief that your honors may feel that in his present spirit he is entitled to such forgiveness as will enable him to start anew, your petitioner respectfully asks your honors for such order as may grant that opportunity."

This court has nothing to forgive except the breach of its confidence; this we deeply regret, but hold no other feeling except one of sorrow because of petitioner's misdoings. We would gladly restore to petitioner the authority he seeks if we were satisfied that he had undergone such a change of mind and heart as to entitle him to a renewal of our trust; but we think the following words of the court in Matter of Palmer, 9 Ohio Cir. Ct. R. 55, peculiarly applicable to the situation now confronting us:

"Looking at the life and conduct of the attorney prior to the disbarment, and the reasons for the disbarment, have his life and conduct since that time been such as to satisfy the court that if restored to the bar he will be upright, honorable, and honest in all his dealings? Will his restoration to the bar be compatible with a proper respect of the court for itself and with the dignity of the profession?"

Certainly petitioner cannot expect us to feel warranted in acting upon his mere promises as to the future without some other

proof that a change has really taken place—experience has taught us the folly of so doing.

[4]   He has presented to us some 60 letters from members of the bar of this state, letters bearing upon their face evidence that the majority at least were written at the solicitation of petitioner.   Among the writers thereof are to be found, not only many of the most prominent practicing attorneys of the state—including several ex-judges—but also several of the present circuit judges of the state.   These men, like ourselves, are officers of the courts of this state, and, as such, have taken the oaths prescribed by statute.   They are men who are deserving of and have the full confidence of this court.   We know that, when writing such letters, they realized their positions as such officers, and that we should and would give the same weight to any information contained in their letters as we would give to same if it had come from their lips while under oath upon the witness stand.   We have read these letters carefully in order to find therein anything that might throw light upon the question we are now called upon to determine—the present fitness of petitioner to practice law in the courts of this state.

Several state that they always found petitioner professional in their dealings with him—a fact of little importance when considered in the light of the findings of this court and confessions of petitioner.   Some mention petitioner's exceptional gifts, and urge same as justifying reinstatement, apparently forgetting that, the greater the mental gifts, the greater the power for evil.   Several merely express a wish that petitioner might be reinstated and confidence in his future conduct.   Some base such confidence upon petitioner's penitent frame of mind and humiliation consequent upon his past errors and mistakes.   Some urge that he should be reinstated simply because, as one writes:

"When an attorney has overstepped the lines and has been called to account by the court and he evidences a desire to be reinstated and a willingness to abide by the rules of conduct which should govern attorneys he should be given the opportunity."

Some twenty or more think petitioner has suffered sufficient *punishment*— apparently forgetting that disbarment is not imposed as a punishment, but as a necessary means of protection to society, and that, as long as society may need protection, this

9—Vol. 45, S. D.

court has no right to deny such protection merely because an individual may suffer from not being allowed to hold the power to injure society. Many urge that the *punishment* he has suffered will deter him from future wrongdoing, forgetting that it is not fear as to the consequences of wrongdoing that qualifies one for admission to the bar, but rather an innate desire and intent to follow the right course. But one has stated anything that bears upon the question before us. This writer, a fellow townsman of petitioner, says, "He is making an honest endeavor to prove himself worthy of the future indulgence of the court;" but this one fails to state any fact in proof of the above, proof of which would certainly bring reinstatement.

We have no criticism of the spirit of condonation that pervades these letters. The writers are willing to condone that which preceded the judgment of disbarment; but they have given to us nothing upon which we can act, and this clearly because few of them are in a position to know any material facts. Most of them knew petitioner merely as a member of their profession; they know nothing of his real life and conduct since. His conduct while a member of the bar has been judged and found wanting; what the court desires to know is, What has been his life since that judgment? Only those in whose midst he lives can answer this; but laymen can answer as well as attorneys. We feel certain that every writer of these letters will agree with the following, which we quote from the letter of one, now gone from our state, who, because of the qualities of his heart and mind, is loved and respected by every one whose privilege it has been to know him:

"So far as disbarment is for the protection of the public, the scales should be evenly held; but so far as it is for the good name of the profession, it is, to a certain extent, an end selfish to us as lawyers, and condonation is, I think, preferable to condemnation."

As members of the court, we must suppress the spirit of condonation which otherwise would influence our action; we must hold the scales of justice evenly.

[5] Is there any proof that, since his disbarment, petitioner has been making an honest endeavor to show himself worthy of renewed confidence? Proof of all-around good citizenship—of a desire to do right toward his fellows and his full duty to his

country—would certainly show petitioner to be entitled to such confidence.

While disbarment proceedings were initiated in March, 1918, hearing therein was not had until after the World War closed, and this because of the fact that petitioner entered military service soon after the time when the formal complaint was served in such proceedings. The war records show that petitioner, then a single man, in December, 1917, claimed the right to deferred classification because of dependency upon him of his mother, a brother, and a sister. In support of such claim, he represented that his income from property owned by him was $1,200 upon which he paid $270 taxes other than income taxes. His claim was sustained by the local board on January 2, 1918. Investigation was ordered by the adjutant general, whose report showed total income from property $1,950 and deductions therefrom for interest, taxes, repairs, etc., sufficient to leave net income of $605, the apparent amount that would be left for the support of his dependents if he should be compelled to go into service. Appeal was taken May 25, 1918; and the action of the local board was reversed and petitioner ordered into service, the district board finding:

"Registrant has father, the mother has husband, and children a father who is not shown to be unable to support his family if he desires to do so. Registrant record shows, voluntarily contributes to support of some of his family, but his income is shown to be sufficient to support alleged dependents if registrant is called for service."

While it is doubtful whether petitioner's father was physically able to suport his wife and children, it is clear that petitioner's income from his property was ample for their support—it appearing that the statement of petitioner and the report of the party who made examination for the adjutant general omitted all consideration of the offices then occupied by him, which were in his own building, and which brought in a rental of $150 per month during petitioner's absence in service. It is perfectly clear that, when petitioner sought to escape his duty to his country, he knew that the claims upon which he sought to escape were false—that the income from his property would be ample to keep his dependents in comfort during his absence.

. Petitioner states that he has righted the financial wrongs inflicted by his wrongdoings; but, so far as we have been advised, he has only done so when he found it necessary. He has not called to our attention one single act that tends to prove that, because of a realization of and regret for a wrong done one of his fellows, he has, of his own volition, acknowledged his wrong and made amends therefor.

We sincerely trust that petitioner will so live that, within a short time, his fellow citizens of Mobridge, without regard to profession or business, will be able to come into this court and satisfy us of the worthiness of petitioner. We will gladly welcome the day when proof is furnished us showing that petitioner has so changed his views of his duties as a member of society as to assure us of his worthiness to be received again as an officer of the courts of our state; we shall be most happy to grant him that certificate upon which those seeking legal assistance have a right to rely confident that it is possessed by one worthy thereof.

The petition is denied.