IN RE FRANCISCO FIGUEROA-MAESTRE, Petitioner.

No. 8.   Argued December 4, 1928.—Decided December 17, 1928.

*J. B. Huyke, F. González Fagundo* and *M. Benítez Flores* for the petitioner.

Mr. Justice Wolf delivered the opinion of the court.

On May 8, 1914, Figueroa Maestre was disbarred from practice in the courts of the Island. He has filed a petition for rehabilitation. While the petition itself contains no real misunderstanding of the duties and responsibilities of this court, yet at the hearing witnesses were examined and arguments presented, evidently on the theory that the petitioner had been punished enough, had suffered enough and that the court should exercise its pardoning power. In other words, while counsel for petitioner presented other arguments as well, a strong appeal was made to us just as if we were sitting, as the Governor sits, to consider the sufficiency of the punishment. The duty or responsibility is totally different. Conceivably a few months or a year might entitle a petitioner to be restored to practice. The test is always the present fitness of a petitioner, once disbarred, to be restored to practice. A lawyer has enormous privileges and grave responsibilities and society must be protected from one who is not fit.

We have found an able discussion of the subject matter and a review of the cases in *In Re Egan* (S.D.), decided February 17, 1928, 218 N. W. 1. After a partial review the court said:

"Under these fundamental principles we must necessarily subsume that the question presented to this court by the application of a disbarred attorney for reinstatement is, in final analysis, not whether the applicant has been sufficiently punished for prior misconduct, but whether he is at the time of his application of such fair character as to justify his admission to practice."

Afterward the court cited from a previous decision, *In Re Morrison,* 45 S. D. 123, 186 N. W. 556, as follows:

"But when, after full and fair trial, he stands convicted of such wrongdoing as demonstrates his unfitness to act as an officer in courts of justice, and his license as such has been revoked, if he petitions for reinstatement, the burden is upon him to establish by satisfactory evidence, either that the court erred in its judgment of disbarment, or that he has undergone such moral change as to render him a fit person to enjoy the trust and confidence once forfeited. A court should be slow to disbar, but it should be even slower to reinstate; it should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer. It therefore becomes the duty of the court, upon a petition for reinstatement of one who has been disbarred, to seek, not merely through hearings in court, but through every legitimate channel open to it, such information as it may obtain touching upon the then moral fitness of the petitioner to be admitted to practice his chosen profession."

The court is under a solemn duty to do everything in its power reasonably to prevent a recurrence of the kinds of acts for which petitioner was disbarred, or other delinquencies. We shall not stop to review them carefully. They are sufficiently set forth in 20 P.R.R. 400. It may be said, however, that the gravamen of the charges was that the petitioner was not only faithless to his client, but he used his office to defraud clients. He made false charges and threatened prosecution against clients when called upon for a restitution of money.

Has the petitioner, to use his own language, undergone such a "regeneration" as to merit his restoration to practice? Absolute certainty in an investigation of this kind is impossible, but the petitioner has left no stone unturned and the evidence submitted to us is of so strong a character as to impel us to grant the petition.

From the jurisdiction where petitioner belongs, namely, Arecibo, practically the whole bar, including the district judge

and the district attorney, attested his present fitness. Professional men, public officials, business men and private citizens from petitioner's native town of Utuado asserted their confidence in him. The lawyers of the neighboring district of Aguadilla similarly backed up the petition, as did the leading lawyers of Mayagüez. The College of Lawyers of San Juan in a public session expressed their cooperation. Similar expressions of confidence came from the lawyers of Ponce, Guayama and Humacao.

The Legislature of Porto Rico passed a joint resolution recommending the rehabilitation of the petitioner. Of course, the responsibility to the public belongs to this court and not to the Legislature, and it was so recognized in the resolution. Likewise it appeared at the hearing that the resolution of the Legislature was not *pro forma,* but that the several committees, largely composed of lawyers, made an investigation into the character and conduct of the petitioner.

The character of a great part of the evidence presented, differently from the case of *Egan, supra,* was the personal knowledge of the witnesses, based apparently on a full appreciation by the witnesses of their responsibility as citizens.

The showing was that from the moment of his disbarment the petitioner had led an exemplary life, privately and in a business capacity. He severed himself from the courts, set himself up in a printing business and also partially supported himself by his knowledge of music. Witness after witness testified to contact and experience with the petitioner and gave us their personal assurance of the good conduct of the petitioner from the time of the disbarment, his present fitness and his personal attainments. A great number of citizens testified that they would unhesitatingly entrust petitioner with the conduct of their affairs. The petitioner himself took the stand and, in effect confessing his previous wrongdoing, said that the conduct that disbarred him was

an aberration from his general nature, that he appreciated his responsibility and that he was now a different man.

As, from the persons and the evidence filed before us, the petitioner has met the burden of showing so far as possible his moral regeneration, the petition should be granted.

Mr. Justice Texidor took no part in the decision of this case.