**Robert REUTTER, Appellant,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary, Appellee.**

**No. 88–5475.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1989.

Decided Nov. 2, 1989.

Mike Abourezk, Gregory, S.D., for appellant.

Mark Smith, Asst. Atty. Gen., Pierre, S.D., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and DUMBAULD, Senior District Judge.[*]

BOWMAN, Circuit Judge.

Robert Reutter was tried in state court in South Dakota and convicted by a jury of two counts of aiding and abetting the distribution of cocaine and one count of conspiracy to distribute cocaine. These convictions were affirmed on appeal. *State v. Reutter*, 374 N.W.2d 617 (S.D.1985). After exhausting his state habeas corpus remedies, *see Reutter v. Meierhenry*, 405 N.W.2d 627 (S.D.1987), Reutter filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (1982) in the District Court. Reutter now appeals from the District Court's order dismissing his habeas claim with prejudice. Reutter argues that reversal is required for three reasons: (1) the state failed to disclose that when its key witness, a convicted felon, testified at petitioner's trial the witness already was scheduled to appear before the South Dakota Board of Pardons and Paroles a few days following the trial; (2) the prosecutor falsely argued to the jury in his closing statement that this witness had nothing to gain from cooperating with the state and testifying against petitioner; and (3) the trial court violated petitioner's Sixth Amendment right of confrontation when it improperly limited the scope of cross-examination of a state witness. Because we agree with petitioner on the first and second grounds, we reverse.

## I.

Petitioner and Dr. Michael Kotas were charged with aiding and abetting and conspiring with David Trygstad to distribute cocaine. Petitioner and Trygstad were former law partners and close friends. Trygstad had previously entered into a plea agreement with the state in which he pled guilty to two counts of conspiracy to distribute cocaine. Although the prosecution recommended that Trygstad's prison terms be served concurrently, Trygstad was sentenced to consecutive five-year prison terms on each count. Pursuant to his plea agreement, Trygstad testified for the state at petitioner's trial and named petitioner as his cocaine supplier. Trygstad was the principal witness for the state and his testimony is the critical evidence directly implicating petitioner in the cocaine offenses charged.

Prior to petitioner's trial, Trygstad filed a petition for a commutation of his sentence with the Board of Pardons and Paroles. His application for commutation was set to be heard by the board on January 27, 1984. On that date, Trygstad appeared before the board and his hearing was delayed for one month. At the February meeting, Trygstad appeared and requested another month's delay, which the board granted. Trygstad's commutation hearing finally took place on March 22, 1984, the same day the jury returned its verdict in petitioner's trial.

One of the members of the three-member parole board scheduled to hear Trygstad's petition was Assistant Attorney General Jon Erickson, a prosecutor at petitioner's trial. Whether Erickson voted on Trygstad's petition is disputed. It is undisputed that Erickson told the board that he still considered the recommendation of concurrent sentences made at Trygstad's sentencing hearing to be fair. The board decided Trygstad's petition favorably and recommended to the Governor that Trygstad's sentence be commuted to two five-year terms served concurrently. Attorney General Mark Meierhenry, lead prosecutor at petitioner's trial, also wrote to the Governor recommending that Trygstad's sentence be commuted because he had learned his lesson and had helped the state significantly in petitioner's case. In April 1984, the Governor commuted Trygstad's sentence in the manner recommended. This made Trygstad eligible for parole almost

---

[*] The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

immediately and in June 1984, the Board granted his parole request and Trygstad was released from prison.

Before trial, petitioner's counsel made a motion for disclosure of all exculpatory evidence known to the state. The court granted the motion and ordered the state to disclose any such evidence by February 24, 1984. It was on that day, February 24, that the parole board agreed to postpone Trygstad's commutation hearing until March 22, after his testimony at petitioner's trial. The state did not disclose this information to petitioner. At the time of the petitioner's trial, which began March 12 and ended March 22, defense counsel was not aware that Trygstad had applied for a commutation of his sentence or that his hearing before the parole board was scheduled to take place on March 22.

## II.

■ The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), "held that the suppression by the prosecution of evidence favorable to an accused upon request [for disclosure by the defendant] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." It is clearly established that evidence that could be used to impeach a witness for the prosecution falls within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1984). Here, the prosecution failed to inform the defense that the state's key witness, Trygstad, had applied for sentence commutation and that when he gave his testimony at petitioner's trial he already had been scheduled to appear before the parole board a few days later. This information obviously could have been used by the defense to attack Trygstad's credibility. We have little difficulty in concluding that the prosecution's failure to disclose this information was a *Brady* violation.

■ The *Brady* rule requires that petitioner's conviction be reversed, however,

only if the undisclosed impeachment evidence was material to the question of petitioner's guilt. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383.

Petitioner's trial counsel was aware that Erickson was a member of the parole board, and questioned Trygstad about this on cross-examination. The cross-examination of Trygstad could have been significantly more effective, however, had defense counsel known that Trygstad's hearing had been rescheduled (without explanation) on two occasions and now was set to take place soon after Trygstad's appearance as the state's star witness at petitioner's trial. It is not difficult to discern that the disclosure of this information might have had a substantial impact on the jury.

The state argues that because Trygstad was a convicted felon his credibility already was suspect and the additional information regarding his petition for commutation and pending hearing thereon would not have affected the jury's judgment as to his truthfulness. Logic of this kind has been dismissed by the Supreme Court. "[T]he fact that the jury was apprised of other grounds for believing that the witness ... may have had an interest in testifying against petitioner [does not turn] what was otherwise a tainted trial into a fair one." *Napue v. Illinois*, 360 U.S. 264, 270, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).

An examination of the record in this case reveals that the state's case against petitioner depended almost entirely on Trygstad's testimony. Trygstad's credibility therefore was the central issue at trial. In light of this, we conclude there is a reasonable probability that the outcome of petitioner's trial would have been different if the jury had known that Trygstad was a candidate for commutation of sentence and that his commutation hearing was scheduled to take place soon after his appearance as state's witness at petitioner's trial.

■ Our conclusion does not depend on a finding of either an express or an implied agreement between Trygstad and the prosecution regarding the prosecution's favorable recommendation to the parole board. The District Court found there was no agreement and this finding is not clearly erroneous. The fact that there was no agreement, however, is not determinative of whether the prosecution's actions constituted a *Brady* violation requiring reversal under the *Bagley* standard. We hold that, viewed in the context of petitioner's trial, the fact of Trygstad's impending commutation hearing was material in the *Bagley* sense and that petitioner therefore is entitled to relief.

■ The materiality of the non-disclosed information becomes even more apparent in light of the prosecutor's closing remarks, which capitalized on defense counsel's ignorance by arguing to the jury that Trygstad had no possible reason to be untruthful in his testimony because he already had been sentenced and therefore had "nothing that he could gain" from cooperating with the state. Although we would have less problem with these remarks if the state had disclosed to the defense the fact of Trygstad's impending commutation hearing, in the circumstances of this case the remarks can be regarded only as misleading and highly improper.

The District Court characterized the prosecutor's remarks as only "marginally misleading" since it is generally understood that every prisoner hopes that cooperation with the state will lead to favorable treatment at some future time. We disagree with that generous assessment. The prosecutor here was not merely glossing over the widely understood fact that cooperation with the state eventually may be helpful to a prisoner. He instead was representing to the jury that Trygstad had no reason to expect any specific benefit from his testimony. In view of the pendency of Trygstad's commutation hearing, which had been rescheduled so that it came at the end of petitioner's trial, this was hardly the full truth and it is difficult for us to conclude there is not a reasonable probability that the prosecutor's remarks had an effect on the judgment of the jury. We do not, however, need to decide whether the prosecutor's deceptive remarks alone would require a new trial. Here, the prosecutor's misleading closing statements merely serve further to undermine our confidence in the outcome of the trial. We are convinced that if the fact of Trygstad's petition for commutation and upcoming hearing thereon had been disclosed to the defense there is a reasonable probability the result of the trial would have been different. Under *Brady* and *Bagley*, petitioner's conviction therefore must be reversed.

### III.

■ Petitioner's final argument is that the trial court improperly restricted his cross-examination of a state witness in violation of petitioner's Sixth Amendment right of confrontation. The "improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to ... harmless-error analysis." *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Because we are granting petitioner's habeas petition on the grounds discussed above, we do not need to address the issue of whether excluding the impeachment evidence "was harmless beyond a reasonable doubt." *Id.* We comment on petitioner's argument, however, because the issue may arise again if the state elects to retry petitioner.

At trial, petitioner sought to refute Trygstad's testimony that petitioner was his source of cocaine by showing that Trygstad and a client of his who also pled guilty to cocaine charges, Richard Cole, had ties to a suspected drug dealer, Frank Island. When Cole testified at trial, the trial court prevented petitioner's counsel from questioning Cole regarding a statement he made to the police in a taped interview that "Island is cold-blooded, and you don't 'roll' on him." On cross-examination Cole admitted, however, among other things, that he had purchased marijuana from Island, that he had used cocaine with Island, that Island told Cole that he had

good connections to drugs, and that in the same taped statement to the police Cole stated that he felt he had access to cocaine through Frank Island. In light of all this material before the jury concerning Cole's relationship with Island, the refusal of the trial court to allow petitioner to elicit testimony that Island was "cold-blooded" did not improperly limit petitioner's right to confront and cross-examine Cole.

## IV.

For the reasons stated in part II of this opinion, the order of the District Court dismissing the petition for habeas relief is reversed. The State of South Dakota shall retry petitioner on the charges underlying his convictions within ninety days from the filing date of this opinion, or the writ of habeas corpus shall issue.