In the Matter of the Petition of Robert
REUTTER For Reinstatement to
the Practice of Law.

No. 18218.

Supreme Court of South Dakota.

Argued March 17, 1993.

Decided May 27, 1993.

R. James Zieser, Tyndall, for Disciplinary
Bd.

Wally Eklund, Johnson, Eklund and
Abourezk, Gregory, for petitioner Reutter.

SABERS, Justice.

In March of 1984, Robert Reutter (Reutter) was convicted of two counts of aiding and abetting the distribution of cocaine and one count of conspiracy to distribute cocaine. As a result, the South Dakota Supreme Court disbarred Reutter from the practice of law on December 31, 1985. *In re Discipline of Reutter*, 379 N.W.2d 315 (S.D.1985).

The United States Court of Appeals for the Eighth Circuit reversed the District Court's dismissal of Reutter's petition for habeas relief on November 2, 1989 and

ordered the State of South Dakota to retry Reutter. *Reutter v. Solem*, 888 F.2d 578 (8th Cir.1989). The State of South Dakota chose not to prosecute Reutter on felony counts a second time and Reutter pled guilty to a misdemeanor of possessing drug paraphernalia.

■ On November 30, 1992, Reutter[1] filed a Petition for Reinstatement with the Disciplinary Board of the State Bar of South Dakota (Board).[2] SDCL 16–19–84. Following a hearing on December 18, 1992, the Board filed its findings of fact and recommendation.[3] SDCL 16–19–86. The Board's findings include the following:

(1) Reutter admitted to using and possessing cocaine on three occasions during the year 1982, on one occasion hallucinogenic mushrooms during the year 1984, and marijuana six to twelve times over a period of fifteen to twenty years. That said admissions constitute four felonies and several misdemeanors.

(2) Reutter does not consider himself a felon even in light of the aforementioned admissions of felonious conduct.

(3) David Trygstad testified that Reutter used cocaine on two occasions in addition to those testified to by Reutter and that Trygstad's testimony was true and in direct conflict with the testimony of Reutter regarding his use of cocaine.

■ The issue on reinstatement is whether Reutter is fit to resume the practice of law. As stated in *Trygstad*, "we must answer the question, 'Can [Reutter] be held out to the public as a person morally fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and officer of the court?' " *In re Reinstatement of Trygstad*, 435 N.W.2d 723, 724 (S.D.1989) (citing *In re Discipline of Dana*, 415 N.W.2d 818, 823 (S.D.1987); SDCL 16–19–31).[4]

■ The burden of proof in a petition for reinstatement is upon Reutter to "demonstrat[e] by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest." SDCL 16–19–84. "The mere formal proof of good character required upon an ordinary application of admission to the bar is not sufficient. The proof must be persuasive enough to overcome the court's former adverse judgment on the applicant's character." *Egan*, 38

1. Reutter has been employed since November, 1988 as a paralegal/legal assistant with a law firm in Gregory, South Dakota. This law firm has offered Reutter a permanent position as a practicing attorney should this court reinstate him to the practice of law.

2. Reutter was reinstated to the practice of law in Minnesota conditioned upon his taking and passing the Minnesota state bar examination including the professional responsibility portion of the bar exam, obtaining those credits required by the State Board of Continuing Legal Education for lawyers in Minnesota to bring him up to date with those skills required of a practicing attorney, and remaining free from conduct that would be grounds for discipline. *In re Reinstatement of Reutter*, 474 N.W.2d 343, 346 (Minn.1991). After completing all of the conditions, Reutter was reinstated on October 23, 1992. Reutter's qualification and fitness to practice law in another state, however, "is a matter of no concern whatever to this court. That is a matter solely to be considered by the

courts of [Minnesota.] The only matter before this court is [Reutter's] qualification and fitness to practice law in this state[.]" *In re Egan*, 38 S.D. 458, 470, 161 N.W. 1003, 1006 (1917).

3. The Board considered Reutter's sworn testimony, as well as the testimony of other witnesses appearing and testifying for him. Additionally, Reutter filed eleven affidavits in support of his reinstatement which are part of the record.

4. SDCL 16–19–31 provides:

The license to practice law in this state is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the court. It is the duty of every recipient of that privilege to conduct himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law.

S.D. at 463–64, 161 N.W. at 1003 (citation omitted).

■ The Board found that:

(1) Reutter failed to appreciate that his prior drug usage was a course of conduct that was prohibited by law and the rules of this profession applicable to him and seemed unwilling to acknowledge that his prior drug use was illegal and violated the rules of professional conduct applicable to him.

(2) Reutter failed to demonstrate by clear and convincing evidence that his moral character is such that he can be held out to the public as a person morally fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and officer of the court.

(3) Reutter failed to demonstrate to the satisfaction of the Board by clear and convincing evidence that he has the moral qualifications required for admission to the practice of law in this State due to his lack of candor with reference to usage of controlled drugs and substances in the past.

(4) The resumption of practice of law by Reutter would be detrimental to the integrity and the standing of the Bar as well as the administration of justice and subversive to the public interest.

The Board recommended that Reutter not be reinstated to the practice of law. While we are not bound to follow the recommendation of the Board, "we are required to give the recommendation careful consideration." *Trygstad*, 435 N.W.2d at 724 (citing *In re Reinstatement of Husby*, 426 N.W.2d 27 (S.D.1988)).

■ As this court stated in Petition of Morrison in 1922, "[a] court should be slow to disbar, but it should be even slower to reinstate; it should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer." *In re Petition of Morrison*, 45 S.D. 123, 126, 186 N.W. 556, 557 (1922). This court has cited *Morrison* with approval throughout the years and it clearly remains the philosophy of this court today. *See Trygstad*, 435 N.W.2d at 724.

■ According to Reutter's argument, it appears that he believes because the conviction upon which his disbarment was based has now been reversed, he is entitled to reinstatement. In advancing this argument, Reutter ignores his conduct constituting felonious possession and use of illegal drugs on six occasions. We find the words of the Minnesota Supreme Court in *In re Reinstatement of Reutter* persuasive.

While a reversal of the attorney's conviction may annul the initial basis for the disciplinary action, the reversal itself neither prompts an automatic reinstatement nor forecloses the possibility of further disciplinary action. Even when presented with the compelling circumstances of an attorney who has been exonerated by acquittal, the court has not hesitated to impose discipline for the same conduct acquitted upon by a jury. Similarly, in the wake of the reversal of a conviction, this court and the ... Board remain free to examine *the entire record* of the attorney's conduct, including the allegations underlying the original criminal charges and conviction, to determine whether disciplinary action is otherwise warranted. Regardless of whether further disciplinary action is pursued, this court must still determine the individual attorney's moral fitness to practice law.

*Reutter*, 474 N.W.2d at 345–46 (emphasis added) (citations omitted).

Reutter argues that "drug usage has led to suspension" but not "disbarment." While we have suspended attorneys from the practice of law for conduct constituting felonious use of illegal substances, *see In re Discipline of Jeffries*, 500 N.W.2d 220 at 226 (S.D.1993); *In re Discipline of Johnson*, 500 N.W.2d 215 at 217 (S.D.1993), these cases are distinguishable.[5] In both

---

**5.** *Jeffries* and *Johnson* were both originally disbarred for drug usage. They were reinstated

*Jeffries* and *Johnson,* the attorneys subject to discipline divulged all instances of drug usage and were found credible by the Board.

This Board found that Reutter did not consistently appreciate and acknowledge his prior drug usage and that he had been less than candid.[6] While Reutter at times admitted to the possession and use of illegal substances which would constitute four felonies and several misdemeanors, the Board found the testimony of Trygstad that Reutter used cocaine on two occasions in addition to those Reutter testified to, "true and in direct conflict" with the testimony of Reutter. The burden is upon Reutter to demonstrate that he has the moral qualifications required for reinstatement. It is not upon the Board to prove guilt of distribution and usage beyond a reasonable doubt. The Board found Reutter's testimony unbelievable, therefore, he has failed to meet his burden.

This court, in looking behind and beyond the convictions and reversal, *see Reutter,* 474 N.W.2d at 346, finds that Reutter cannot "be held out to the public as a person morally fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and officer of the court[.]" *Trygstad,* 435 N.W.2d at 724 (citations omitted). The findings of the Board are sufficient to substantiate their recommendation that Reutter be denied readmission. The findings of the Board are affirmed and the Petition for Reinstatement is denied. *In re Petition of Chamley,* 349 N.W.2d 56, 58 (S.D.1984).

MILLER, C.J., and WUEST, J., concur.

AMUNDSON, J., concurs specially.

HENDERSON, J., dissents.

with suspensions over the dissents of two justices only after petitioning the court for rehearing. *Id.*

6. In Reutter's Petition for Reinstatement, he admits to the use of a "cocaine-like" substance on several occasions. When asked during the hearing by Verne Goodsell, a member of the Board, whether he was admitting that he used cocaine, Reutter replied:

AMUNDSON, Justice (concurring specially).

Reutter has obviously presented numerous reasons why his petition for reinstatement should be granted: (1) His convictions have been reversed; (2) compliance with the terms and conditions for reinstatement in the State of Minnesota, *In re Reutter,* 474 N.W.2d 343, 346 (Minn.1991); (3) work as a legal assistant with the South Dakota law firm representing him in this matter; and (4) community support for his reinstatement.

On the other hand, there is a troubling part of Reutter's history as reflected in the previous writings of this court that causes this Justice to hesitate in granting this petition. There is no question that in *Reutter v. Solem,* 888 F.2d 578 (8th Cir.1989), the court held that Reutter had not gotten a fair trial because the prosecutors failed to disclose information regarding their star witness—Trygstad's hearing for commutation of his sentence. This case does not discuss or infer that the testimony of any other witness in the trial was tainted or unreliable. In *Reutter,* the Minnesota court stated:

> Immediate reinstatement on the heels of a reversal, however, ignores that a reversal, other than for evidentiary insufficiency, implies little as to the actual occurrence of the alleged underlying events.
>
> ... Similarly, in the wake of the reversal of a conviction, this court ... remain[s] free to examine the entire record of the attorney's conduct, including the allegations underlying the original criminal charges and conviction[.]

474 N.W.2d at 345. Such a review discloses the *following evidence having been* presented against Reutter:

> I think the point is, you know, I just have accepted the fact that it was cocaine, and I can't tell the difference. I think that was the legal issue in my trial or one of the issues in my trial was, well, when you are talking about these parties that I admitted being at what was it, and there wasn't anybody that could get up and swear and say, well, this absolutely was or was not cocaine.

Mrs. Soto testified that she first met Reutter in Oroville, California, in the summer of 1981 through her husband, John Soto, who at the time was an employee of Reutter's company, S & R Minerals. Reutter visited the Soto home in Oroville for the first time in early 1982 and on several occasions thereafter. During one visit, Mrs. Soto observed her husband and Reutter use cocaine. During another visit, occurring sometime between January and March of 1982, she overheard a conversation between her husband and Reutter, during which Reutter stated that he would send money to her husband, who in turn would mail cocaine to Reutter in Sioux Falls. John Soto's source of cocaine was located in San Francisco. In March 1982, Mrs. Soto observed Reutter give her husband $10,000. Mrs. Soto later witnessed her husband packaging cocaine in a Western Airlines speed pack, which he subsequently mailed from San Francisco. At trial, Mrs. Soto verified her husband's signature on several receipts from Western Airlines Speed Pack Service. These same receipts showed Sioux Falls as the point of origin and Reutter as "shipper." Mrs. Soto testified that her husband died on July 25, 1982.

\* \* \* \* \* \*

Mrs. Soto's testimony satisfies the test of relevancy in that it constituted evidence of Reutter's overall scheme to distribute cocaine in Minnehaha County[.]

*State v. Reutter*, 374 N.W.2d 617, 624–25 (S.D.1985).

With this incisive evidence of a scheme to distribute cocaine standing in black and white and nothing having been presented to ameliorate its impact, I cannot vote for reinstatement. This is not a criminal proceeding where every aspect of a case must be shown by proof beyond a reasonable doubt. The petitioner's contention that he was merely a recreational user of cocaine rings hollow in this Justice's ears as it apparently did with the Board.

HENDERSON, Justice (dissenting).

I vote to grant the petition to reinstate Reutter to the practice of law in this state.

Through testimony, affidavits of practicing attorneys, statements of community leaders, and expressions of law enforcement, Reutter has demonstrated by clear and convincing evidence that he has the moral qualifications, competency and learning in law required to practice law in South Dakota. In Finding of Fact XV of the Disciplinary Board, said Board conceded that Reutter demonstrated he had been an asset to his community and his employer for a period in excess of five years. This showing includes the mayor of the city he lives in, the local bank president, the chief of police, and business leaders in the general locale. *There was no evidence presented to the Disciplinary Board to the contrary.* Thus, the Conclusions of the Board are unsupported by the Findings of Fact. They must be by settled law in this state. *Knodel v. Bd. of County Comm'rs*, 269 N.W.2d 386 (S.D.1978); *Kirkeby v. Renaas*, 85 S.D. 515, 186 N.W.2d 513 (1971).

In 1985, I singularly dissented to the conviction of Reutter. *State v. Reutter*, 374 N.W.2d 617 (S.D.1985). In 1989, the Eighth Circuit Court of Appeals reversed the conviction. *Reutter v. Solem*, 888 F.2d 578 (8th Cir.1989). Attorney Reutter spent three and one-half (3½) years in the South Dakota State Penitentiary pending his appeal. *By law, he suffered 3½ years of imprisonment for a criminal conviction which was reversed.* As Mahatma Ghandi, the noted philosopher and religious leader of India declared: Life is pain. Never before, in the annals of South Dakota jurisprudence, has an attorney served time for three and one-half (3½) years as a prisoner behind bars for a criminal conviction only to learn that a federal court held that the South Dakota Supreme Court was wrong. In essence, Reutter was not given a fair jury trial; his rights were violated, nay, trampled upon, in that the prosecution committed a Brady violation and the prosecutor's closing argument was "misleading and highly improper." *Reutter v. Solem* at 582. If any impartial legal mind will

read this case, it becomes very apparent that South Dakota's prosecutors had soiled ethical hands. To win was their goal and a fair trial was cast to the winds. The Parole Board, which factored into Trygstad's testimony to convict Reutter, was comprised of one of the prosecutors in the case.

We have more pain for Reutter, apparently to be suffered, for years hence. South Dakota is still punishing Reutter and this Court is its organ. With all my being, I loathe it and condemn the present judgment of this Court for its total unfairness. A reversal nullifies the original conviction. Yes, the slate is wiped clean! *See Bullington v. Missouri*, 451 U.S. 430, 442, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981). This Court still does not get the message!

Reutter has redeemed himself in my book. Before the Disciplinary Board, he acknowledged the wrongfulness of using cocaine in the year 1982. Testifying before the Board, *see* Hearing Transcript pages 14, 17, 18, he characterized his usage as "terrible actions," "it was wrong," "I take total responsibility," and on page 33 thereof, he expressed of his drug usage that it gave "a black eye to a professional organization." Therefore, the Disciplinary Board's finding that Reutter does not appreciate the wrongfulness of his drug usage is clearly erroneous. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). It borders on being outrageous.

When this Justice requested counsel for the Disciplinary Board at the petition hearing in our Court Room to answer "What turned the Board off [on Reutter]," counsel replied: "They didn't think he was telling the truth." I posed: "About what?" Counsel expressed: "About using cocaine." Ladies and Gentlemen of the legal profession: Reutter admitted it at the hearing and the transcript so shows. Hearing Transcript, page 17, Reutter: "I admitted the usage [of cocaine]," under questioning of Board Counsel Zieser. Transcript, page 23, Reutter: "Well, the coke that I had was over at Mike Kota's house." Transcript, page 24, Reutter, in response to a question of how many times he used it: "It was just a few, a few, like two or three times."

Transcript, page 27, under questioning of Board member Goodsell, Reutter expressed: "I think the point is, you know, I just have accepted the fact that it was cocaine, and I can't tell the difference [between cocaine and a cocaine-like substance]." Reutter admitted under questioning of Board member Welk, at page 43 of the transcript, that he used cocaine in the summer and fall of 1982 (3 times). On page 46 of the transcript, Reutter testified he never "sold any drugs." Author's Note: Reutter was convicted of two counts of aiding and abetting distribution of cocaine and one count of conspiracy to distribute cocaine; all three convictions were set aside by the Eighth Circuit Court of Appeals. On page 47 of the transcript, Board member Welk asked Reutter if he ever transported drugs, cocaine or marijuana; Reutter replied: "Absolutely not." Apparently, the Board simply will not believe him and takes the position that he will not admit to using cocaine. I have searched the record of the Board hearing to find a statement that Reutter expressed he was a recreational user of cocaine; it is not there. He did admit, at page 48, to the recreational use of marijuana at one juncture in his life.

Reutter, per the record and his supplication to the members of this Court in Open Court, reflected that *he has been drug free since 1984. There is not one scintilla of evidence to refute this.* He has been acting as a legal assistant in a prominent law firm's office who vouchsafe for his competency and character. He has completed 90 hours of continuing legal education, has passed the Minnesota Bar Examination, and was reinstated to the practice of law in Minnesota. Majority opinion acknowledges this but discounts it, apparently, as being meaningless. Through the years, now nearly 15 in number, by meeting the Justices of that Court and reading their opinions, I have developed a hefty respect for their legal ability and scholarly attainment. I choose not to set it aside. For this Justice to express, as has the majority opinion, that it "is a matter of no concern whatever to this Court" is disdainful to our Minnesota brothers. We surely are not obliged to

follow their decision to reinstate Reutter but neither should we disparage its significance. Our showy decision carries an implication or appearance of under-attention to the decision of a sister state. Are we reacting to the Circuit Court of Appeals' reversal? A decision built upon vanity is like a poorly constructed house which at first gleams in its newness, and then begins to look poor and shabby after a few years of exposure. Long after my surcease of sorrow on this Court, time will expose this decision for what it is: Unjust and unduly harsh.

I deeply resent Finding of Fact XIII of the Disciplinary Board. Said Board was obviously miffed because Reutter "did not consider himself a felon, even in light of the previous paragraph of these findings." *In truth, in fact, and in law, Reutter is not a felon; you have to be convicted of a felony to be a felon.* It is obvious that the Board's clear insinuation is that Reutter is dishonest by expressing he does not have a felony record. And, yes, he had the supposed temerity to tell the Board he was not a felon and was not appearing before them as a felon. He is right. And the Board's finding is, once again, clearly erroneous. And, again, it borders on the outrageous. Every member of that Board is a lawyer but one lady, who does not have a degree in law. It appears to me that all of these "lack of candor" expressions are conclusions—subjective conclusions of the Board—rather than conclusions based upon facts or objective findings. In case the Disciplinary Board and this Court do not get the message: Reutter's convictions have been set aside as being null and void by the Eighth Circuit Court of Appeals. To characterize him as a "felon" is improper and a wrong basis to deny reinstatement. Article 6 of the United States Constitution provides:

This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution *or laws of*

*any state to the contrary notwithstanding.* (Emphasis supplied mine).

We are bound by the decision of the Eighth Circuit Court of Appeals—and so are the members of the Disciplinary Board. Reutter was convicted of a Class I misdemeanor, possessing paraphernalia. Per Reutter's testimony, page 19 of the transcript, he was never asked to plead guilty to possession or usage of cocaine.

One of the subjective assumptions made by the Disciplinary Board about Reutter not being straightforward in telling the truth to the Board relates to Reutter's testimony before the Board. Reutter testified he did not recall using cocaine with Trygstad on two occasions in 1982, but he testified he used cocaine on several occasions in 1982. This testimony was coming clean with the Board. Trygstad did not testify or recollect in the criminal trial during 1984, that Reutter used cocaine with him in 1984. Not once did Trygstad make mention of this; now, in the present disciplinary hearing he mentioned that Reutter did. Disciplinary Board has seized upon this apparent inconsistency as duplicity on the part of Reutter.

Reutter was also candid before this Court. He expressed his regret for "giving a black eye to the Bar." He was thankful that he had been drug free since 1984 and wanted to practice law in Gregory, South Dakota with the prominent law firm who now represents him in this proceeding. In fact, a former South Dakota State Bar President, senior member of this firm, appeared and testified on behalf of Reutter's application for reinstatement to the State Bar.

Counsel for the Board argued before this Court that Reutter "had no remorse." Based upon his statements in Open Court and his testimony before the Board, such a statement is without foundation in this record. It is one of the ingredients of the poisoned chalice in this case. In response to a question of Mr. Zieser, Reutter expressed (at page 21, Transcript Hearing):

Well, we tried to offer it in the petition and the affidavits that have been submitted. I don't know, I didn't gather the

affidavits, they were I guess gathered by, the ones from Gregory, they were gathered by people in the firm. But I think part of what they wanted to show through those was that the life I have led in Gregory is one that at least my peers perceive is of a, on a community acceptable level and it's hard to—I mean, if there is anything else that through the time I go to work every day and I try to maintain a lifestyle that is the kind that my employers accept as morally responsible. I just have not had any relationship whatsoever with any illegal drugs since that time some 10 years ago. I have just totally stayed away, I have no inkling. *I recognize not only the wrongfulness, but what it did to my life.* I would be the, I guess I would have to be stupid to have a, not to change that right now. (Emphasis supplied mine).

Does this sound like a man who is not remorseful?

We have consistently expressed in ethics cases that the public must be protected from further wrongdoing. *In re Weisensee*, 88 S.D. 544, 546, 224 N.W.2d 830, 831 (1975), *citing In re Rude*, 88 S.D. 416, 221 N.W.2d 43 (1974). *See State v. Kirby*, 36 S.D. 188, 154 N.W. 284 (1915). Before us, we need not fear that the public will be subjected to wrongdoing. Reutter has the backing of an entire community which has watched him—daily—perform tasks in the community for a period of several years. Had Reutter been morally unfit, this community, in a sparsely populated locale, would witness it. They would know if he was a bad guy or a good guy. And they have accepted him into this ranching and farming community as a contributor and decent citizen. Misrepresentation of truth (alleged misrepresentation) seems to be the core reason for denying Reutter the right to practice law.

We have a deluge of litigation in this Court, in fact so many that it becomes difficult to focus on that which we have held in the past few months. Ethics cases are no exception. Recently, we handed down *Discipline of Taylor*, 498 N.W.2d 200 (1993). Although we sanctioned the attorney with public censure, he was still permitted to continue the practice of law. In *Taylor*, the attorney made a series of misrepresentations to his clients, advising his clients that their case was progressing through the legal system. Attorney Taylor advised his clients that a Summons and Complaint had been filed; that a Default Judgment had been entered; that the Default Judgment would be executed in South Dakota; that the Default Judgment had been transferred to another state for execution; that the authorities in the other state were ready to execute on the Default Judgment; and, finally, liquid assets had been seized pursuant to the Default Judgment. All of these representations were all false. Compare, now, the alleged "not coming clean" with the Disciplinary Board in this case and the falsehoods told by Taylor, whose saving grace was his understanding of his problem and dealing with it constructively. The same may be said for Reutter. Taylor's equitable posture was his decent contribution to his community. So it is with Reutter. Justice should be evenhanded.

*In re the Matter of Reinstatement of Husby*, 426 N.W.2d 27 (S.D.1988), this Court in a 4–1 decision, Henderson, J., dissenting, permitted an attorney to be reinstated after he pleaded guilty to using a controlled substance *and* smuggled cocaine (as an attorney) into a county jail for a man he was defending for rape and murder of an innocent young girl. Husby had (1) never taken the South Dakota Bar exam (2) never passed a national academic test and (3) never taken any ethics examination. Over my strenuous objection, he was reinstated. Husby did not establish his competency to practice law; Reutter has. Reutter continued his legal education and kept current with the law; Husby made no showing whatsoever in this regard. Husby and the present decision are in conceptual conflict.

A special concurrence was filed herein to augment and support the majority opinion. First, it fails to mention that the Minnesota Supreme Court recognized:

The Director and the Lawyers Professional Responsibility Board *do not dispute that Reutter has demonstrated his present moral fitness to practice law, nor do we find any evidence of unfitness.* The criminal conviction, which served as the basis for disbarment, has since been nullified and erased. *Reutter has openly admitted his misconduct, acknowledged the wrongfulness of that misconduct, and expressed his remorse.* Reutter's admitted misconduct, the misdemeanor offense and his use of controlled substances, occurred almost ten years ago, was not severe, and would not, of itself, have warranted disbarment. *The panel concluded that Reutter was morally fit to enter the practice of law in this state, and nothing has been brought to this court's attention to dispute that conclusion.* (Emphasis supplied mine).

Secondly, it flogs Reutter again with evidentiary statements contained in the 1985 reversed conviction in the South Dakota Supreme Court, all pertaining to the testimony of a "Mrs. Soto." Justice Amundson was not a member of the 1985 *Reutter* court. He was appointed to this Court on March 11, 1991. He was not a member of the Disciplinary Board who heard the present proceedings when the Board met at Sioux Falls, South Dakota, on December 18, 1992. However, he is a former member of said Board and a former Chairman thereof.* Apparently, he bases his factual observations upon a reversed case handed down by this Court in 1985.

In reviewing this transcript, from whence sworn testimony came, and by virtue of the only proceeding upon which Findings of Fact could be birthed, *the facts depicted in the special concurrence of Justice Amundson are not in the record.* Hence, the special concurrence is based upon facts outside of the record. The only reference to cocaine from California and a "guy named DeSoto out in California" was made by Board counsel Zieser while questioning Reutter. Zieser asked him if he got cocaine from "DeSoto," and Reutter answered (page 23 of transcript): "No, I didn't." He expressed "Well, the coke that I had [used] was over at Mike Kota's house." This "scheme to distribute cocaine standing in black and white," as Justice Amundson describes it, stands totally unsupported by the facts developed at the Board's hearing in Sioux Falls. The "scheme," charged as a conspiracy to distribute cocaine by the state's prosecutors, was declared a nullity. Now, it is resurrected again by a special concurrence.

Recently, two prosecutors in South Dakota received suspensions from the practice of law, notwithstanding extensive use of drugs, while prosecuting members of the public, via this Court's two decisions. *In re Discipline of Jeffries,* 500 N.W.2d 220 (1993); *In re Discipline of Johnson,* 500 N.W.2d 215 (1993). Their conduct was a double standard at its zenith and their conduct poisoned the criminal justice system of this state, destroying the public's confidence in our courts. These prosecutors were servants of the law and are held to a higher standard lest the "special significance to the prosecutor's obligation to serve the cause of justice" be lost. *Arizona v. Youngblood,* 488 U.S. 51, 63, n. 2, 109 S.Ct. 333, 340, 102 L.Ed.2d 281 (1988) (Blackmun, J., dissenting). Reutter was not a prosecutor.

I agree with Justice Sabers that *Jeffries* and *Johnson* are distinguishable from Reutter. They are distinguishable because the prosecutors were charged with the responsibility to eradicate the drug culture and to prosecute, as agents of the state, those who trafficked in drugs. While holding these offices of public trust, they subverted the calling which the people paid for by taxpayers' dollars. Both Johnson and Jeffries were given suspensions from the practice of law, a lesser sanction of discipline than Reutter, who was disbarred and now is being denied reinstatement. Both Johnson and Jeffries had a long history, entailing many years of drug usage, going

---

* Source: Unified Judicial System handout to the public and law students at the University of South Dakota Law School, March, 1993, reflecting he was a committee member and Chairman of the South Dakota Disciplinary Committee (1981–1986).

back to their youth, and that is not the fact with Reutter. Reutter's usage was confined to a far more limited time. Apparently, the moral of the story is that prosecutors in South Dakota are granted more leniency than an ordinary attorney. The majority opinion would attempt to justify the sanctions towards Johnson and Jeffries, as compared to Reutter, because they "divulged all instances of drug usage and were found credible by the Board," whereas Reutter supposedly did not. Such accusation is unfounded. As reflected above, by the record—and I have read every word and every sentence thereof—Reutter acknowledged the usage of cocaine and made other references to this admission. The majority opinion has leaped upon one answer of Reutter and taken it out of context. The majority opinion is trying to make it appear that Reutter would only admit to a "cocaine-like" substance. However, under the questioning of Goodsell, he unequivocally expressed that he "accepted the fact that it was cocaine."

Sirs, the cup we bring to Reutter is filled with pain and it burns his lips. I sadden for his anguish. This cup is fashioned by a clay of injustice and I do not choose to be one of the potters of such injustice. I would reinstate him to the practice of law so that he does not join the Legion of the Lost.