**In the Matter of the Petition of Richard James HOPEWELL for Reinstatement to the Practice of Law.**

No. 18955.

Supreme Court of South Dakota.

Argued Jan. 9, 1995.

Decided March 8, 1995.

Rehearing Denied April 17, 1995.

R. James Zieser, Tyndall, for the Disciplinary Bd.

Carleton R. Hoy of Hoy and Hoy, Sioux Falls, for petitioner.

ZINTER, Circuit Judge.

On August 6, 1994, Richard James Hopewell (Hopewell) petitioned for reinstatement of his license to practice law. After a September 9, 1994 hearing, the Disciplinary Board of the State Bar of South Dakota (Board) recommended that reinstatement be denied. We deny reinstatement.

On November 3, 1993, this Court suspended Hopewell's license. That disciplinary proceeding was initiated as the result of Hopewell's unprofessional conduct and public statements made during the course of a campaign for judicial office. *See Matter of the Discipline of Hopewell,* 507 N.W.2d 911 (S.D. 1993).

Although we do not repeat Hopewell's unprofessional statements in this decision, we do note that they involved more than "an isolated incident where the emotions of the moment in the heat of a campaign got the better of Hopewell's normal judgment." *Id.*

at 917. We also note that the suspension was imposed not only for the public statements made in the campaign, but also because Hopewell's statements in the disciplinary proceedings were "in some cases ... more extreme and irresponsible than the original public statements." *Id.* at 914. We noted "justifiable concern over Hopewell's state of health both for protection of the public and Hopewell as an individual." *Id.* at 917–918. Because of these concerns, the suspension was imposed for an indefinite period of time, and we specifically provided that Hopewell was to comply with eight requirements "as a *condition precedent* to *any petition* for reinstatement."[1] (emphasis added).

Notwithstanding these conditions precedent, Hopewell did not comply with condition eight in a timely manner, and he did not reimburse the $4,249.85 as required by condition five before he petitioned for reinstatement. Instead, on July 2, 1994, Hopewell attempted to retroactively comply with condition five by tendering twelve post-dated checks to the State Bar. Hopewell intended that the checks would retroactively satisfy the December 3, 1993 payment deadline by making monthly payments from June 1994 through July 1995.

The State Bar refused Hopewell's tender unless he demonstrated financial inability to comply with condition five. Hopewell neither responded with the requested financial information nor complied with condition five before he filed his petition for reinstatement. In fact, Hopewell took no further steps to comply until the September 9, 1994 Board

hearing. At that time he filed an affidavit in which he alleged that he was unable to pay the costs in a lump sum. Although the affidavit reflected that Hopewell's assets were not liquid, it also reflected that his net worth exceeded $500,000.

At the hearing the Board examined Hopewell concerning his financial condition, his failure to comply with condition five and his fitness and ability to practice law. Hopewell asserted various reasons for his failure to comply with condition five as ordered by this Court. Hopewell first testified that he did not comply with the order because of a "want of money." However, he later testified that he had not paid the costs because he "wasn't sure [he would be] able to pass the Multi–State ethics test." Yet on another occasion he testified that he had not complied because "there wasn't any certainty that [he would be given] a clean bill of mental health [by Dr. Bean]." Although Hopewell had filed an affidavit of inability to pay the costs at the Board hearing, and although he persisted in arguing to the Board that he was unable to pay the costs in a lump sum, he inexplicably paid the costs in full just hours after the reinstatement hearing.

■ After considering Hopewell's testimony and demeanor at the hearing, the Board entered the following findings of fact:

XII. That the Petitioner was required to comply with the notice provisions of SDCL 16–19–78 through 16–19–80 in ten (10) days. That the Petitioner completed compliance on or about the 10th day of Decem-

---

1. Those requirements were that:
 (1) Respondent shall pass the Multi–State Professional Responsibility Examination.
 (2) Respondent shall obtain an updated psychiatric examination from a licensed psychiatrist approved by this Court concerning his mental health and his fitness to practice law.
 (3) Reinstatement pursuant to SDCL 16–19–84 shall be contingent upon a favorable report from said psychiatric examination and respondent's agreement to follow any recommendations from this examination.
 (4) Additional conditions for reinstatement may be added by the Court based upon the results of the psychiatric examination.
 (5) Respondent shall on or before December 3, 1993, pay Four Thousand Two Hundred Forty-nine and 85/100 Dollars ($4,249.85)

to the State Bar of South Dakota as reimbursement of its itemized expenses allowable under SDCL 16–19–70.2, proof of said payment to be filed with the Clerk of this Court on or before December 13, 1993.
 (6) Respondent shall on or before December 3, 1993, pay Two Hundred seventy-nine and 03/100 Dollars ($279.03) to the Clerk of the Supreme Court as reimbursement of the expenses incurred by the Referee and his Court Reporter and the cost of the transcript preparation.
 (7) Respondent shall pay the costs of any reinstatement proceedings pursuant to SDCL 16–19–81.
 (8) Respondent shall comply with the provisions of SDCL 16–19–78 through 16–19–81.

ber 1993, approximately forty (40) days following the Court order....

XVII. That the Board finds that during the course of the hearing on September 9, 1994, the Petitioner failed to respond to questions from the Board in a coherent and concise manner. That the Petitioner rambled repeatedly in response to questions; that he was unaware that his responses were inadequate; and that he openly disregarded the advise of his counsel to quit rambling.

XVIII. That the Petitioner's responses to questions were circumstantial starting with an admission that he agreed with the Board or the Supreme Court on issues involving his disciplinary action. Then Petitioner would continue circumstantially launching into a discussion whereby the applicant denies [sic] direct responsibility and transfers [sic] the responsibilities [sic] for his actions to the Supreme Court, the Disciplinary Board, the Board Secretary, KELO TV, or the agent who slipped him the angel dust 15 years ago.

That this pattern of passive denial and passive resistance was demonstrated by the Petitioner's response and general demeanor before the Board. That this conduct has existed in all hearings before the Board and continues [sic] to be displayed by the Petitioner towards the various complaints which the Board has considered from time to time.

XIX. That the Board finds that while the Petitioner professes to have learned the error of his ways that led to disciplinary action, his underlying behavior has not changed. The Petitioner believes he is right, and fails to accept responsibility for the consequences of his decisions and conduct.

XX. The Board finds that the Petitioner is obsessive and compulsive regarding the legal cases he is working on pro se. He describes these as monster cases with legal black holes and while the cases may be complex, the Petitioner exaggerates or intentionally enhances the complexity of the lawsuits.

XXI. That the Board finds that the Petitioner has been suspended for nearly one year and knew pursuant to an Order by the Supreme Court that he had to pay the costs of his prior hearings as a condition precedent to his application for reinstatement. That even knowing this, the Petitioner took no steps to personally plan his finances and to place them in order to pay the costs which were a condition precedent to his reapplication. The Board finds this to be an example of the Petitioner's inability to take responsibility for his own conduct. That the Petitioner attempted at the hearing to defer his responsibility back to the Board because of financial hardship, when in fact, he was not indigent and had a net worth of approximately $500,-000.00....

XXIII. That the Petitioner has not taken financial responsibility to find gainful employment during the period of his suspension. Instead, he has chosen to work on his cases on a pro se basis and has not sought any type of gainful employment.

XXIV. That the Board notes that the Supreme Court's order is not a standard to be blindly waived in the face of an applicant upon readmission if there has been substantial compliance. However, the failure to take responsibility to obtain funds in anticipation for requests for readmission is clear and convincing evidence that the Petitioner is not exercising the responsibility expected of a lawyer seeking reapplication.

XXV. That the Board finds that the Petitioner has not taken seriously the Court's orders. He had ample financial resources to make arrangements to pay the costs required, as is shown by his submission of the costs within hours after the hearing, but totally and unequivocally failed to take any steps to meet this responsibility prior to the hearing. Were the Petitioner actually indigent, the Board would have seriously considered recommending to the Supreme Court an installment payment for substantial compliance; however, this Petitioner refused to conduct his personal affairs in such a manner so that these costs could be paid and he could meet these obligations. It is not a manner of indigence, but rather an issue of compliance. That the Board finds that the Petitioner's

request to pay the costs on an installment postdated check basis is typical of the Defendant's response on the issues that have brought him before the Board. First, the Petitioner agrees to pay the costs, enlarges upon how he has not contested the costs, that he is in full agreement and understands that he must pay the costs before readmission. Then petitioner advises that he cannot comply because he is indigent and has no funds. When pressed by the Board to submit a financial statement the Petitioner shows assets in excess of $500,-000.000. Other inquires show that the Petitioner has not worked or been gainfully employed at any time during the period of his suspension and he now seeks accommodations through the Court's order because of these circumstances. This establishes a practice and pattern of conduct where the Petitioner, although passively, refuses to comply with the order of the Court.

XXVI. The Board finds that when the Petitioner was confronted with such conduct he immediately responds that he did not understand this was critical and did not understand the gravity of the issue. He then attempted to transfer the responsibility back to Mr. Barnett who as a matter of attempting to determine whether or not the applicant was indigent suggests [sic] that the Petitioner file a financial affidavit. That the Petitioner then advised that if this really is serious, he will obtain the money. All of this is a waste of time for the board and the entire process merely because the Petitioner refuses to recognize that there was a Court order and that it was within his ability to perform, perform timely and in a straight forward manner not a year later.

XXVII. The Board further finds that the witnesses and affidavits supplied in support of the good character and capability of the Petitioner to practice law were individuals who have had no substantial or meaningful relationships with the Petitioner during the period of suspension.

Based on these findings, the Board recommended that Hopewell's petition for reinstatement be denied.

At the hearing before this Court, Hopewell contended that he should be reinstated because he has now met the conditions for reinstatement. Although Hopewell conceded that the Board's findings of fact have support in the record, he contended that he should not be faulted for being a "poor witness" before the Board.

 We agree that there is sufficient evidence in the record to support the Board's findings. Therefore, they will not be disturbed by this Court. *Hopewell,* 507 N.W.2d at 916; *In re Jaquith,* 79 S.D. 677, 117 N.W.2d 97 (1962); *Matter of Discipline of Strange,* 366 N.W.2d 495 (S.D.1985). We further believe that Hopewell's performance before the Board should not be excused [2] and that the Board's findings do not support reinstatement.

 The burden of proof in a petition for reinstatement is on the petitioner. *In re Reutter,* 500 N.W.2d 900 (S.D.1993). Not only must a petitioner demonstrate compliance with the conditions of reinstatement, but "the petitioner shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest." SDCL 16–19–84. The moral qualifications required for admission include, but are not limited to, the qualities of

---

**2.** We acknowledge that a lay witness' "performance" at an evidentiary hearing may, under certain circumstances, be entitled to some special consideration because a lay witness may be intimidated by, or be unfamiliar with the hearing process. That consideration will not, however, be given to an attorney like Hopewell who testified at the hearing that his legal abilities were "state of the art in trial and appellate work." More fundamentally, however, the very purpose of the Board's hearing is to observe an attorney applicant's performance in order to assess the fitness and competency of the applicant to practice law. We reject Hopewell's suggestion that a "poor performance" by a lawyer is a reason to grant a petition for reinstatement. Rather, an applicant's performance at a hearing is a fundamental consideration to be utilized in deciding whether to grant a petition for reinstatement.

honesty, candor, trustworthiness, diligence, reliability, observance of fiduciary and financial responsibility, and respect for the rights of others and for the judicial process. SDCL 16–16–2.1.

■ In considering these requirements we first note that Hopewell did not satisfy the notice condition of reinstatement in a timely manner. Furthermore, Hopewell disregarded this Court's explicit order to pay the State Bar's costs as a condition precedent to his petition for reinstatement. Instead of seeking an extension or paying the costs as ordered, Hopewell elected to remain unemployed during his suspension and then plead indigency. Moreover, in pleading indigency, Hopewell disclosed a substantial net worth yet he admittedly took no steps to pay the costs. He also admitted writing insufficient funds checks during his suspension. Although Hopewell ultimately paid the costs, he did so immediately after he filed the affidavit and vigorously asserted that he was unable to pay. We agree with the Board that Hopewell's method of satisfying this Court's order demonstrated a pattern of passive refusal to comply. The conduct is certainly not clear and convincing evidence of the moral qualities of diligence, reliability, financial responsibility, and respect for this Court's orders.

■ The Board's findings also cast considerable doubt on Hopewell's competence. The findings reflect that Hopewell was unable to respond in a coherent and concise manner to questioning from the Board, he rambled repeatedly in response to questions, he was unaware that his responses were inadequate, and he openly disregarded the advice of his counsel to quit rambling. The Board's findings also reflect that Hopewell was obsessive and compulsive with regard to the legal work he had pending and that he exaggerated or intentionally enhanced the complexity of his suits. Finally, notwithstanding Hopewell's assertion that his legal abilities were "state of the art," he testified that he "didn't realize that [satisfying condition precedent five] would be so important...." We fail to understand how a competent attorney could have misunderstood the meaning of this Court's explicit condi-

tions precedent for filing a petition for reinstatement. Hopewell failed to present clear and convincing evidence of the competency required for admission to practice law.

■ We finally consider whether Hopewell's readmission would be detrimental to the integrity and standing of the bar, the administration of justice and the public interest. In attempting to make those determinations, the Board repeatedly asked Hopewell how he could insure that he would not repeat the misconduct observed in the prior proceeding. The Board found that Hopewell's demeanor and responses to its questions reflected the same passive denial and the same passive resistance in admitting culpability for the misconduct which led to his initial suspension. Furthermore, although Hopewell "professed" to have learned from the misconduct which led to his suspension, the Board found that his underlying behavior did not change—he continued to believe that he was right and he failed to accept responsibility for the consequences of his prior misconduct. These responses to the Board did not provide any assurance of protection for the integrity and standing of the Bar, the administration of justice, and the public interest.

The Board's findings demonstrate that the reasons for Hopewell's original suspension have not changed. Hopewell was unable to comply with this Court's unambiguous order in a timely fashion. He continued to be unable to truly admit culpability for his misconduct and failures. He repeatedly rambled and was incoherent at the Board's hearing. Hopewell did not provide clear and convincing evidence of the requirements for readmission. The petition is denied.

MILLER, C.J., and SABERS, J., and JOHNS, Circuit Judge, concur.

ZINTER, Circuit Judge, for AMUNDSON, J., disqualified.

JOHNS, Circuit Judge, for KONENKAMP, J., disqualified.