#23366-DG
**2007 SD 71**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE
PETITION FOR REINSTATEMENT OF
RICHARD J. HOPEWELL,
as an Attorney at Law.

\* \* \* \*

ORIGINAL PROCEEDING

\* \* \* \*

RON J. VOLESKY of
Volesky Law Firm
Huron, South Dakota                    Attorney for applicant.

ROBERT B. FRIEBERG                     Attorney for State Bar
Beresford, South Dakota                Disciplinary Board.

\* \* \* \*

ARGUED
NOVEMBER 30, 2006

OPINION FILED 7/18/07

#23366

GILBERTSON, Chief Justice

[¶1.] This Court suspended Richard James Hopewell (Hopewell) from the practice of law on November 3, 1993. Matter of Discipline of Hopewell, 507 NW2d 911 (SD 1993) (*Hopewell I*). We denied his petition for reinstatement of his license to practice law on March 8, 1995. Matter of Hopewell, 529 NW2d 578 (SD 1995) (*Hopewell II*). On May 27, 1997, we granted Hopewell's motion to dismiss his petition for reinstatement to practice law. Petition of Hopewell, #19720 (*Hopewell III*). On January 13, 1999, we granted Hopewell conditional reinstatement to the practice of law for a five-year probationary period. In re Reinstatement of Hopewell, 1999 SD 6, 587 NW2d 733 (*Hopewell IV*).

[¶2.] On March 30, 2004, Hopewell petitioned the Disciplinary Board of the State Bar of South Dakota (Board) for unconditional reinstatement to practice law. Following a hearing, the Board, on August 24, 2004, entered findings of fact, determined that Hopewell "substantially complied" with the terms of his probation, and recommended his unconditional reinstatement.

[¶3.] During its review of the Board's proceedings this Court received and reviewed a transcript of Naatjes v. Naatjes, #02-1339 (Minnehaha County), in which Hopewell appeared as the attorney for the plaintiff. We remanded this matter to the Board "to consider the Naatjes record along with all other facts which are relevant to a full and complete adjudication of the petition of Hopewell for an unconditional reinstatement."

[¶4.] The Board held a hearing and, on August 23, 2006, filed supplemental findings of fact, determined that Hopewell's professional conduct in *Naatjes* was

"intended only to serve his client's best interest," and again recommended his full reinstatement.

[¶5.] During oral argument before this Court on November 30, 2006, questions were raised about Hopewell's malpractice coverage during the probationary period as well as his ability to procure coverage should he be fully reinstated. The Board, in response to this Court's inquiry, issued a report and supplemental recommendation on February 5, 2007. It amended its 2004 and 2006 recommendations by adding:

> That as a condition to full reinstatement, [Hopewell] be required to maintain professional liability insurance with limits of not less than $100,000/$300,000 in a company authorized to do business in South Dakota.

Hopewell agreed to this condition.

[¶6.] For all the reasons set forth herein, we deny full reinstatement.

FACTS

*Hopewell I*

[¶7.] Hopewell was admitted to practice law in South Dakota on August 16, 1962. In 1990 when he was a sole practitioner in Sioux Falls, South Dakota, he entered a judicial election against an incumbent circuit court judge.

[¶8.] A disciplinary proceeding was initiated as a result of Hopewell's unprofessional conduct during the judicial campaign as well as his pre-meditated and unprofessional attacks against his opponent and the judicial system. In the course of the disciplinary proceeding, Hopewell's statements were more extreme and irresponsible than his original public statements. At oral argument before this Court, this Court was justifiably concerned over the state of Hopewell's health

based upon his prior conduct, the record in the case, and his appearance before the Court.

[¶9.]     This Court rejected the Board's and Referee's recommendation of a public censure. Hopewell was suspended from the practice of law in all of the courts of the State of South Dakota for an indefinite period of time beginning December 3, 1993. The judgment of suspension ordered Hopewell to comply with eight conditions during the period of suspension and as a condition precedent to any petition for reinstatement. These conditions included passing the Multistate Professional Responsibility Examination, obtaining a favorable psychiatric examination concerning his mental health and fitness to practice law, and paying State Bar and referee expenses.

### Hopewell II

[¶10.]     On August 6, 1994, Hopewell petitioned for reinstatement of his license to practice law. The Board recommended that reinstatement be denied. We denied reinstatement for three reasons.

[¶11.]     First, Hopewell demonstrated a pattern of passive refusal to comply with this Court's unambiguous, explicit order to pay costs as a condition precedent to his petition for reinstatement. Second, there was considerable doubt as to his legal competence due to his rambling, incoherent responses at the Board's hearing and his obsession with and exaggeration of the complexity of his pro se legal work. Third, he continued to be unable to admit culpability for the failures and consequences of his misconduct and provided no reassurance or support for the integrity of the Bar, the administration of justice and the public interest.

*Pro se Litigation*

[¶12.]     Shortly before the 1990 judicial election, the Sioux Falls Argus Leader published an article that included a statement by Hopewell admitting that he was found nude at a drug store and alleging the incident occurred because he was surreptitiously drugged by a secret agent of a political adversary.  *Hopewell I*, 507 NW2d at 913.  Three days later KELO-TV ran two news stories on the incident and subsequent events.  As a result, Hopewell, while suspended from the practice of law, acted pro se and brought a libel action against KELO and its reporters.  Hopewell v. Midcontinent Broadcasting, 538 NW2d 780 (SD 1995).

[¶13.]     The circuit court granted summary judgment.  Hopewell appealed. This Court affirmed, holding that a qualified privilege protects confidential news sources from disclosure under certain circumstances, the open courts provision of the state constitution does not guarantee successful litigation, and Hopewell received due process.

[¶14.]     In its opinion**,** the Court noted that:

> The record in this case is *voluminous*.  There are 738 pages in the two separate volumes of the file plus another volume of miscellaneous filings and briefs.  There are four amended indexes.  There are seven separate transcripts. Hearings were held before Judge Srstka on December 18, 1991 (on a motion to dismiss for failure to prosecute by Hopewell), and before Judge Konenkamp on July 23, August 17, and October 15, 1993 and January 4, 1994.
>
> Judge Konenkamp was patient and polite in difficult circumstances and bent over backwards to ensure that Hopewell was afforded due process.  Hopewell was given every opportunity to be heard.  Summary judgment was only granted when Hopewell made no showing of actual malice to generate a genuine issue of material fact to support a trial on his libel claims.  *Janklow v. Viking*

> *Press*, 459 NW2d at 419; Wilson v. Great Northern
> Railway Company, 83 SD 207, 157 NW2d 19 (1968).

*Midcontinent,* 538 NW2d at 783 (emphasis in original). On appeal Hopewell raised thirty issues in his docketing statement and twelve in his pro se brief. The appeal, however, boiled down to two issues.

[¶15.] The United States Supreme Court denied Hopewell's petition for writ of certiorari to the Supreme Court of South Dakota. Hopewell v. Midcontinent Broadcasting Corporation, 519 US 817, 117 SCt 69, 136 LEd2d 30 (1996).

[¶16.] Hopewell also brought a 42 USC § 1983 action against media defendants and City of Sioux Falls employees. The Eighth Circuit affirmed the district court's grant of summary judgment to the defendants. Hopewell v. Dunker, 56 F3d 68 (1995).

*Hopewell III*

[¶17.] On June 6, 1996, Hopewell petitioned the Board for reinstatement. The Board held a lengthy hearing on June 10, 1996. A month later Hopewell and the Board agreed to extend the time for the Board to file findings and recommendations so that Hopewell could file a motion with this Court to recuse Board members and strike Board questions and Hopewell's answers. Hopewell and his attorney stipulated to his attorney's withdrawal from the case. This Court approved the stipulation. It also denied Hopewell's pro se motion for an ex parte hearing before this Court on his petition for reinstatement.

[¶18.] The Board entered extensive findings on December 9, 1996. It found that during the course of the reinstatement proceeding Hopewell began "an unrelenting and unmitigated and groundless attack upon the character,

impartiality, and integrity" of one Board member.  It found that this conduct was similar to his verbal attacks on judges in *Hopewell I.*

[¶19.]     The Board found that Hopewell's current mental condition "appears to be associated with the episode he suffered in 1978, a bipolar mood disorder, for which he was prescribed medication," but which he made an independent decision to discontinue.

[¶20.]     The Board found that Hopewell's answers to Board questions were "rambling, verbose, disjointed and unresponsive . . . often in obtuse and incoherent statements."  Although Hopewell did not attend CLE's, read appellate court opinions, or update his code, he challenged Board members to question him on legal issues and became angry and defensive when they did.  He continued to minimize the conduct that resulted in his suspension.  He declared that he would not carry legal malpractice coverage because of his substantial net worth and yet he was unable to cover the expenses of prior proceedings.

[¶21.]     The Board concluded:

> A.     Hopewell has failed to establish by clear and convincing evidence the competency and learning in law required for admission to practice law in this state or that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice or subversive of the public interest.
>
> B.     Hopewell continues to suffer from a mental condition which causes him to attack those whom he sees as adversarial to his position and to do so without confirmation of the allegations he makes, and there is justifiable concern over Hopewell's state of mental health both for protection of the public and Hopewell as an individual.

  C. If Hopewell is not suffering from a mental impairment, then he has willfully, maliciously, and intentionally attacked the integrity of a Member of the Disciplinary Board based solely upon a "mental note" he made in 1993 with no effort to verify his allegations, which allegations have been shown to be false.

  D. If Hopewell is not suffering from a mental impairment, his actions and conduct during these proceedings would constitute serious violations of the Code of Professional Responsibility which would be the basis for disciplinary action and demonstrates a lack of the qualities of honesty, candor, trust-worthiness, diligence, reliability, and respect for the rights of others and for the judicial process required of an attorney to practice in this state.

  E. Hopewell has not maintained a current working knowledge of the law and an objective testing of his knowledge of substantive and procedural law would be required before his reinstatement to the practice of law.

[¶22.] It recommended:

> The Disciplinary Board recommends that the Petition for Reinstatement of Richard Hopewell be denied and further recommends that the Supreme Court specifically require that any further application by Hopewell be conditioned upon his submission to a complete psychological evaluation by psychiatric and physchological [sic] experts as the Court deems necessary, that any readmission be subject to the passing of the substantive and ethics bar exam required for admission of lawyers to the Bar of this State and providing proof of insurance coverage for legal malpractice.

[¶23.] Hopewell filed a motion with this Court to stay further proceedings so he could "file a petition for writ of certiorari with the United States Supreme Court for its review of this Court's November 8, 1996, Order Denying [Hopewell]'s October 17, 1996, Motion for Court Order Striking Hostile Prosecutorial Examination of

[Hopewell] and Adverse Examination of [Hopewell]" by the Board. This Court denied the motion for stay and set the matter for oral argument on April 1, 1997.

[¶24.] Hopewell sought and received a continuance of his hearing before this Court. His motions to purge the record of the Board's findings, strike certain evidence, and reinstate him to practice law were denied. On May 27, 1997, Hopewell filed a motion asking this Court to allow him to withdraw his petition for reinstatement and dismiss the scheduled June 4, 1997 hearing. The Court granted the motion.

*Hopewell IV*

[¶25.] Only six months after we granted Hopewell's motion to withdraw his petition for reinstatement, Hopewell, on November 16, 1997, filed a third petition for reinstatement. He appeared before the Board at its hearing on June 15, 1998.

[¶26.] At the hearing Dr. Anthony Vaca, a board certified adult psychiatrist who reviewed Hopewell's history and examined Hopewell, testified that Hopewell did not presently suffer from any mental disorder or illness or clinical syndrome and he did not need therapy or psychotropic medication. While Hopewell exhibited "obsessional conversational style" and "exaggerated defense of personal self" which led to his past conduct, Dr. Vaca found that Hopewell now recognized and controlled those traits. He recommended that a mentoring program would provide assurance of this control.

[¶27.] The Board found that Hopewell's appearance, conduct, demeanor and testimony before it demonstrated his genuine recognition of the impropriety of his past conduct and his capacity and ability to control the behavioral traits which caused his past problems. It found that he had passed the MPRE and

recommended that he be required to attend CLE seminars to maintain competency in substantive and procedural law.

[¶28.]    The Board concluded:

A.    Hopewell has established his competency and learning in law required for readmission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice or subversive of the public interest under the conditions set in recommendations.

B.    Hopewell has established compliance with the conditions required by the Supreme Court in its opinion and order of November 3, 1993.

C.    Although Hopewell exhibits behavioral characteristics and traits which must and can be controlled, he does not suffer from a mental condition which requires therapy or medication and the imposition of recommended conditions upon his readmission to the practice of law will prevent any reoccurrence of the past conduct.

The Board recommended that conditional reinstatement be granted.

[¶29.]    Hopewell appeared personally before this Court. We considered "all the materials before us in this matter," *Hopewell IV*, 1999 SD 6 at ¶ 6, 587 NW2d at 735, including the favorable examination of Hopewell by a licensed, approved psychiatrist, his competency and learning in the law, and the Board's recommendation for conditional reinstatement. We found that Hopewell had proven by clear and convincing evidence that he complied with the requirements for reinstatement set forth in *Hopewell I*. On January 13, 1999, we granted limited reinstatement with the following conditions:

1.  Hopewell shall be on probation under the provisions of SDCL 16-19-35(3) for a period of five years.

2.  Hopewell shall be under the supervision of Sioux Falls attorney, Richard L. Johnson, for a period of five years. Hopewell will not file a complaint, petition, pleading, brief, motion, or affidavit or commence any proceeding in any court or with any administrative agency without the approval of his supervising attorney.

3.  Hopewell shall be required, during the five-year probationary period, to attend continuing legal education programs, obtaining a minimum of 15 CLE hours annually, and certify his attendance at these programs to the Board.

4.  Hopewell shall be required, during the five-year probationary period, to file quarterly reports with the Board providing information on the cases he is handling, to include the status of each case, progress in each case, the likely completion date for filing of pleadings, discovery schedules, hearing or trial dates, appeals, and other appropriate information in each case.  These reports shall be verified and signed by Hopewell and his supervising attorney.

5.  Hopewell shall abide by all directions given by the supervising attorney as it relates to the management of his office and client matters.

6.  Hopewell shall be required, for such time as he is actively practicing law in this state, to provide proof of malpractice insurance annually by submitting certificate of coverage from his insurance carrier to the Board.

7.  Hopewell and Richard L. Johnson are jointly and severally responsible to advise the Court and Disciplinary Board if at any time during the five-year period of supervision, Richard L. Johnson is unable or unwilling to continue as supervising attorney to Hopewell.

*Hopewell IV*, 1999 SD 6 at ¶6, 587 NW2d at 735.  We cautioned that:

> Upon completion of this five-year period, unconditional reinstatement to practice law in this state shall not be automatic, but will be considered by this Court upon petition by Hopewell following a hearing before the Disciplinary Board to determine compliance with the above named conditions.

*Id*.

### Hopewell V

[¶30.]     The order conditionally reinstating Hopewell was filed on January 13, 1999.  On March 30, 2004, Hopewell filed a petition for unconditional reinstatement to practice with the Board.  Hopewell, his supervising attorney Richard L. Johnson, and his counsel Ron J. Volesky, appeared at the Board hearing on June 16, 2004.

[¶31.]     The testimony at the hearing revealed that for the first four years of his conditional reinstatement Hopewell was unable to obtain malpractice insurance, failed to attend 15 hours of CLE annually and had a practice limited to representing himself.  In February 2003 he was able to obtain malpractice insurance but only limited to matters handled through the Volesky Law Firm.  On June 12 and 13, 2003, he represented Dawn Naatjes in a custody case before Judge Kathleen Caldwell.  According to Johnson, Hopewell was zealously representing his client; however, during the course of the trial, Judge Caldwell contacted Johnson and expressed her concern that Hopewell was objecting too much.  Johnson stepped in and concluded the case.  On June 18, 2003, Hopewell attended his first CLE.

[¶32.]     Johnson testified that Hopewell substantially complied with this Court's order of conditional admission.  He and Volesky recommended Hopewell's full reinstatement.

[¶33.]     The Board found:

1.  [Hopewell] is a 1962 graduate of the University of South Dakota Law School. He was suspended from the practice of law for an indefinite period on November 3, 1993, and was conditionally reinstated to practice on January 13, 1999. The Order of Conditional Reinstatement was modified on January 26, 2000.

2.  The Order of Conditional Reinstatement required that [Hopewell] comply with certain conditions, and [Hopewell] was placed on probation under the provisions of SDCL 16-19-35(3) for a period of five years.

3.  [Hopewell] has been under the supervision of his supervising attorney, Richard L. Johnson, at all times since the entry of the Order of Conditional Reinstatement.

4.  [Hopewell] is required to secure the approval of his supervising attorney prior to filing a complaint, petition, pleading, brief, motion, or affidavit, or commencing any proceeding in any court or with any administrative agency, with which requirement [Hopewell] has substantially complied.

5.  [Hopewell] has attended seven Continuing Legal Education programs since June 2003, constituting at least 15 CLE hours in 2003 and in 2004.

6.  [Hopewell] did not attend Continuing Legal Education programs in the earlier years following the entry of the Order of Conditional Reinstatement for the reason that the [Hopewell] was not engaged in the practice of law and then held a present intention not to return to active practice.

7.  [Hopewell] has filed quarterly reports with the Board during each calendar quarter since the entry of the Order of Conditional Reinstatement, including the first quarter of 2004. The reports have been verified and signed by [Hopewell] and his supervising attorney.

8.  [Hopewell] has followed and abided by directions given by the supervising attorney relating to the

> management of [Hopewell's] office and handling of client matters.
>
> 9.    [Hopewell] is now associated with his counsel, Ron J. Volesky, as "of counsel".
>
> 10.    [Hopewell] is currently a named insured in the professional liability insurance policy issued to Volesky Law Office, which coverage is restricted to the extent that [Hopewell] is a named insured ". . . only in rendering or failing to render legal services on behalf of the named insured [Volesky Law Office]."
>
> 11.    [Hopewell's] supervising attorney is of the opinion that [Hopewell] should be fully reinstated.

Although Johnson made the Board aware of Hopewell's conduct in the Naatjes case and Judge Caldwell's concerns, the Board made no findings regarding the Naatjes case.

[¶34.]    The Board determined that Hopewell substantially complied with the terms of his probationary period and recommended his full reinstatement to the practice of law.

[¶35.]    After the Board filed its findings with this Court, Judge Caldwell, pursuant to SDCL 16-19-40, informed this Court of the Naatjes case. This Court received and reviewed a transcript of Naatjes v. Naatjes. On October 29, 2004, we remanded the matter to the Board to consider the Naatjes record and all other facts "relevant to a full and complete adjudication" of Hopewell's petition for unconditional reinstatement. *See* SDCL 16-19-41.

-13-

[¶36.]     Three days before the Disciplinary Board's June 19, 2006, hearing on the remand, Hopewell's attorney wrote to Judge Caldwell[1] and asked her to withdraw her objection to the Disciplinary Board's recommendation that Hopewell receive full reinstatement to the practice of law.  One of the reasons for the request was:

> For yet another reason for you to consider in withdrawing your objection to the Disciplinary Board's Recommendation that Hopewell "be fully reinstated to the practice of law," may I call your attention to the fact that, due to disabling back surgery in May of 2005 and a respiratory problem with which he is now afflicted, Hopewell has been closing down his practice of law in that he has not been taking on any new cases for more than a year now and finds it difficult, if not impossible, to attend CLE seminars as required by the Supreme Court's Order of Conditional Reinstatement.

[¶37.]     Following the Board hearing, it entered findings of fact which included:

> 7.     The Naatjes proceedings involved questions of witness credibility, allegations of drug abuse, claims of perjury and recanted testimony, and dispute over admissibility of certain medical records, among other things.  The proceedings were somewhat emotional and highly contested.
>
> 8.     [Hopewell] prepared thoroughly for the Naatjes hearing.
>
> 9.     [Hopewell] was zealous in his advocacy, persistent in making objections, sometimes asked disjointed or convoluted questions, confused witnesses by questions, interrupted the flow of proceedings with objections, and aggravated Judge Caldwell because of his objections and sometimes audible response to witnesses in the course of their testimony. [Hopewell] was patient, apologetic, and courteous.

---

1.     The letter was copied to Richard L. Johnson, Hopewell's supervising attorney, and Robert Frieberg, the Board's attorney.

10. [Hopewell] did not know how to get a certain affidavit into the record, and Mr. Kading, his adversary, assisted [Hopewell] in laying proper foundation for its admission.

11. Judge Caldwell felt nervous toward [Hopewell], and felt as if she had no control in the hearing. Following the second day of hearing in the Naatjes matter, Judge Caldwell contacted [Hopewell]'s supervising attorney, Richard L. Johnson, and asked why Mr. Johnson was not in the courtroom if he was supposed to be supervising [Hopewell]. Judge Caldwell told the Board that she was "wild" and "extremely upset" when she called. Judge Caldwell told Mr. Johnson that she did not want [Hopewell] to continue in the Naatjes matter. Mr. Johnson then represented Ms. Mancil-Naatjes in the third and final day of hearing conducted some weeks later.

12. After Mr. Johnson completed the case, Judge Caldwell ruled against Ms. Mancil-Naatjes. Her decision was based upon the facts presented and the factors set forth in the Fuerstenberg case (1999 SD 35), and was not influenced by [Hopewell's] conduct.

13. [Hopewell's] client was satisfied with [Hopewell's] representation, notwithstanding the unfavorable result.

14. Naatjes was the first contested hearing in which [Hopewell] had participated following his conditional reinstatement in 1999.

15. [Hopewell] is competent, is sometimes unorthodox or eccentric in his style, and has a long held professional interest in representing minorities, women, and the poor, often pro bono or at reduced rates of charge.

16. [Hopewell] is passionate in representing his clients' interests.

17. [Hopewell] has a limited practice, with only three active cases reported as pending at the time of his March 31, 2006, quarterly report.

-15-

18. [Hopewell] suffered from a bipolar disorder in the 1970s, was last treated for the disorder in 1982, and has since been free from any mental illness.

19. [Hopewell] now suffers from osteoporosis and incipient emphysema, and is able to maintain office hours only 14 or 15 hours per week, at his downtown Sioux Falls office.

20. [Hopewell] is genuinely contrite for the conduct that led to his suspension from the practice of law nearly 20 years ago.

21. Naatjes was the first and only case which Judge Caldwell heard as a circuit court judge in which [Hopewell] was involved, and was also the only case which Scott Kading had in which [Hopewell] was involved.

22. Scott Kading is of the opinion that [Hopewell] should be supervised in the courtroom.

23. Judge Caldwell is of the opinion that [Hopewell] should not be allowed to practice without conditions. Judge Caldwell is of the further opinion that it would be detrimental to the profession to permit [Hopewell] to practice without conditions.

24. Bradley Bonynge, an experienced Sioux Falls attorney, acquainted with [Hopewell] for about 40 years, is of the opinion that [Hopewell] provided competent representation to [Hopewell's] client in the Naatjes matter, based on Bonynge's review of the transcript. Bonynge said he would refer clients to [Hopewell].

25. Richard L. Johnson, [Hopewell's] supervising attorney, also is of the opinion that [Hopewell] provided competent representation in the Naatjes matter. Mr. Johnson continues to believe unconditional reinstatement is appropriate, and that [Hopewell's] goal is to do "what's right for his clients and the public."

> 26. Judge Caldwell and Messrs. Kading, Bonynge and Johnson were all aware of [Hopewell's] history of prior misconduct in forming their opinions.

[¶38.] The Board determined that Hopewell's "professional conduct in the Naatjes matter was in the bounds of zealous and passionate advocacy, and, although upsetting to the trial court, was intended only to serve his client's best interest." It recommended Hopewell's full reinstatement.

[¶39.] Following oral argument before this Court, the Board investigated Hopewell's malpractice insurance coverage during the probationary period and his current ability to obtain coverage. It amended its recommendation for full admission by adding a condition that Hopewell maintain professional liability insurance with limits of not less than $100,000/$300,000 in a company authorized to do business in South Dakota.

## DECISION

[¶40.] A license to practice law in South Dakota "is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the court." SDCL 16-19-31. Every recipient of a license to practice law has the duty to "conduct himself [or herself] at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." *Id.*

[¶41.] In considering whether to fully reinstate Hopewell, it is our duty "to put aside, so far as possible, that natural feeling of sympathy for one who has manifestly suffered, and to determine in so far as we can *from the entire record*, without fear, favor, or partiality, the question, and the sole question, presented for

#23366

our judicial determination, namely, the present fitness of the petitioner to be admitted to practice law[.]" In re Egan, 52 SD 394, 403, 218 NW 1, 5 (1928). (emphasis added). The Board and this Court are "free to examine *the entire record* of the attorney's conduct[.]" In re Reutter, 500 NW2d 900, 902 (SD 1993)(quoting, *with approval*, In re Reinstatement of Reutter, 474 NW2d 343, 345-46 (Minn 1991)). This includes consideration of "the prior record of the attorney." In re Discipline of Eicher, 2003 SD 40, ¶ 47, 661 NW2d 354, 369. It is also our duty in reinstatement cases "to seek, not merely through hearings in court, but through every legitimate channel open to it, such information as it may obtain touching upon the then moral fitness of the petitioner to be admitted to practice his chosen profession." In re Petition of Morrison, 45 SD 123, 126, 186 NW 556, 557 (1922).

[¶42.]　　　In fulfilling these duties,

> we must determine whether the petitioner can "'be held out to the public as a person morally fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and officer of the court[.]'" In re Reutter, 500 NW2d 900, 901 (SD 1993) (quoting In re Reinstatement of Trygstad, 435 NW2d 723, 724 (SD 1989)).

*Hopewell IV,* 1999 SD 6 at ¶ 5, 587 NW2d at 735.

[¶43.]　　　"The burden of proof in a petition for reinstatement is on the petitioner." *Hopewell II*, 529 NW2d at 581. Compliance with the conditions of reinstatement does not guarantee automatic reinstatement:

> Not only must a petitioner demonstrate compliance with the conditions of reinstatement, but "the petitioner shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity

-18-

and standing of the bar or the administration of justice, or subversive of the public interest." SDCL 16-19-84. The moral qualifications required for admission include, but are not limited to, the qualities of honesty, candor, trustworthiness, diligence, reliability, observance of fiduciary and financial responsibility, and respect for the rights of others and for the judicial process. SDCL 16-16-2.1.

*Hopewell II*, 529 NW2d at 581-82.

[¶44.] Hopewell has been conditionally admitted since January 13, 1999. The Board has recommended his full reinstatement with the caveat that he maintain professional liability insurance. While we carefully consider the Board's recommendation, we are not bound to accept it. *Hopewell IV*, 1999 SD at ¶ 5, 587 NW2d at 735.

A.

[¶45.] On January 13, 1999, when we granted Hopewell conditional reinstatement we required him to attend continuing legal education programs (CLE's) for a minimum of fifteen hours annually during the five-year probationary period.

[¶46.] When Hopewell petitioned for full reinstatement five years after he was conditionally reinstated, he had only attended CLE's for the one year immediately preceding his petition. For the first four years of his probationary period Hopewell failed to attend any CLE's. Despite this, the Board determined that Hopewell substantially complied with this Court's order, finding that Hopewell did not attend CLE's because he was not engaged in the practice of law and did not intend to return to the active practice of law.

[¶47.]     This Court's order regarding CLE attendance was unambiguous, clear, and explicit. CLE attendance was mandatory whether or not Hopewell was actually practicing law. This Court has long been concerned with Hopewell's "pattern of passive refusal to comply" with this Court's orders, *Hopewell II*, 529 NW2d at 588, and his compliance only when he is seeking a benefit. His refusal to attend CLE's continues his pattern of seeking to comply with this Court's orders on his own terms rather than the Court's terms. This is of immediate concern because he is seeking unconditional reinstatement and yet represented to Judge Caldwell that his ill health makes "it difficult, if not impossible, to attend CLE seminars as required[.]"

B.

[¶48.]     Throughout the years on the numerous occasions that Hopewell has been before the Board and this Court, both entities have been justifiably concerned with his competence. While we were satisfied that he had established his competency when we granted conditional reinstatement in 1999, we sought to assure his continued competency and learning in law by imposing the CLE requirement. Hopewell only began to comply with the requirement in June 2003 after he represented Dawn Naatjes in his first and only contested hearing prior to seeking full reinstatement.

[¶49.]     Perhaps, in part, because of his failure to attend CLE's, Hopewell's advocacy in Naatjes was characterized by persistent and rambling objections, constant interruptions, disjointed and convoluted questioning. He confused witnesses and interrupted the proceedings. He repeatedly accused his opposing counsel of manufacturing evidence and, with no apparent basis to do so, accused him of attempting to suborn perjury. He did not know how to get exhibits into the

record and was only able to do so with the guidance of his adversary. While the case was emotional, it was not complex. The transcript of the case, however, is voluminous.

[¶50.] Hopewell's advocacy in the Naatjes case so disturbed Judge Caldwell, who presided over the case, that she in effect removed Hopewell during the course of the proceedings and called Johnson, Hopewell's supervising attorney, to complete the case. Judge Caldwell told the Board that Hopewell should not be allowed to practice law without conditions:

> I don't think that he is competent to practice law. I don't think that he should be allowed to practice law without conditions. Even when he was practicing with Dick Johnson supervising him, which was the case in this case, I don't think that he does his clients any good.
>
> I don't think he understands the Rules of Evidence. He doesn't listen to the Court. His objections are constant. It was like we could never move anywhere with the trial because every time somebody would say something, he would be jumping up with an objection and it was -- it was just frustrating and I don't think that he should be representing people.
>
> * * *
>
> Well, I don't think it would be in the public interest to have Mr. Hopewell representing people in court because I don't think that he can do a good job for them. I think that he is -- he would end up prejudicing their cases in front of judges and doesn't present the case properly and I think that his name and his case is public enough that people in the state, at least in this area, know of Mr. Hopewell and know of the problems he has had in the past and all the things that went on in the Kean campaign and the other cases that he has been involved in.
>
> I think that if he gets his license back unrestrictedly that it would be a detriment to the legal profession. I think it

> would make the legal profession look like we absolutely do not police our own people.
>
> I also think of the fact that if you think would you want your mother, your dad, your sister, your daughter, your brother to be represented by him? I don't think any -- I don't think people would. I don't think that he should be representing people.

[¶51.] In recommending Hopewell's unconditional reinstatement, the Board failed to give sufficient evidentiary weight to Judge Caldwell's concerns about Hopewell's courtroom demeanor and knowledge of the law as well as her recommendation. Its conclusion conflicts with the only judge who dealt with Hopewell in a contested hearing while he was under supervised conditional reinstatement.

[¶52.] We recently examined the importance of a judicial perspective in attorney disciplinary cases. In re Discipline of Laprath, 2003 SD 114, 670 NW2d 41. We noted that judges routinely make determinations as to attorney competence. Trial judges have the unique "'opportunity to observe and evaluate the character, competence, industry and fidelity of lawyers who regularly appear before him [or her] day in and day out.'" Id., 2003 SD 114 at ¶ 73, 670 NW2d at 63 (quoting State ex rel Lawrence v. Henderson, 1 Tenn Crim App 199, 433 SW2d 96 (1968)). In addition, each trial judge has the disciplinary responsibility to take appropriate action if there is a substantial likelihood of a violation of the code of professional responsibility or to inform the appropriate authority of attorney conduct that raises a question as to a lawyer's honesty, trustworthiness or fitness. Canon 3(D)(2), South Dakota Code of Judicial Conduct, SDCL 16-2 Appx; Laprath, 2003 SD 114 at ¶ 73, 670 NW2d at 63; Eicher, 2003 SD 40 at ¶ 49, 661 NW2d at 369-70.

[¶53.] Here Judge Caldwell performed her duties by contacting Hopewell's supervising attorney regarding his courtroom behavior, informing this Court of the Naatjes case, and testifying before the Board. We give substantial weight to Judge Caldwell and opposing counsel Scott Kading's opinion that Hopewell continues to need supervision since they were the only judge and lawyer to observe Hopewell's performance first-hand in a contested case.

C.

[¶54.] Hopewell was conditionally reinstated on January 13, 1999. For the next four years his practice was limited to representing himself. There were, however, a couple of instances where he started to represent clients, but his supervising attorney advised him to cease because of his lack of malpractice insurance. He was only able to obtain malpractice insurance in February 2003 and then limited only to matters handled through the Volesky Law Firm.

[¶55.] One year later, on March 30, 2004, Hopewell petitioned the Board for unconditional reinstatement. He had practiced law on an extremely limited basis for one year. He only had malpractice insurance for one year and had attended CLE's during the last year of his five year probationary period. His performance on his sole contested case so concerned the trial court, that the trial court in essence removed him and had his supervising attorney complete the case. Despite these circumstances the Board found that Hopewell substantially complied with the conditions of his probation and recommended his unconditional reinstatement on August 24, 2004. The Board reaffirmed its recommendation on August 22, 2006, after we remanded the matter for consideration of the Naatjes case, which is a portion of "all other facts which are relevant to a full and complete adjudication of

the petition of Hopewell for an unconditional reinstatement." At that time, Hopewell had three active cases, and ill health allowed him to practice for fourteen to fifteen hours a week. He told the Board, "I really just want to fade in the sunset with my respect and dignity intact."

[¶56.] For over fifteen years the Board and this Court have been called upon numerous times to assess Hopewell's fitness to practice law. During this period of time the composition of the Board has regularly changed while the majority of the members of this constituted Court have, for the most part, been regularly involved with this series of lengthy proceedings. The Board and this Court, in fulfilling our duties, have had the benefit of the record in this entire case, the rules guiding reinstatement proceedings, this Court's case law in disciplinary proceedings, and the extensive case law specific to Hopewell. All of these make it clear that compliance with the conditions this Court imposed for Hopewell's five year probationary period is merely one factor to be considered in determining whether Hopewell is fit to be entrusted with professional and judicial matters.

[¶57.] Although we have applied it in a different setting, the following rationale is appropriate guidance to us in this matter:

> We "will not compare counsel's performance to that of some idealized 'superlawyer' and will respect the integrity of counsel's decision in choosing a particular strategy, these considerations must be balanced with the need to insure that counsel's performance was within the realm of competence required of members of the profession."

Owens v. Russell, 2007 SD 3, ¶ 7, 726 NW2d 610, 615 (citations omitted).

[¶58.] We conclude that Hopewell has not proven by clear and convincing evidence that he has "the moral qualifications, competency and learning in law"

required for unconditional readmission. His failure to attend CLE's for the majority of his probationary period is not substantial compliance with this Court's order. His attempt to represent clients when not covered by malpractice insurance and his handling of the Naatjes case while under supervision, convince us that supervision is vitally needed. This is especially true due to his limited practice and his desire to represent those in society who are the most vulnerable and in need of competent, stable legal representation. Hopewell's history and performance during the probationary period indicate that he has not met his burden of proof that he is entitled to unconditional reinstatement. We, therefore, deny the petition.

[¶59.] SABERS, ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶60.] MILLER, Retired Justice, for KONENKAMP, Justice, disqualified.